# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
### MIAMI DIVISION

INSOMNIAC HOLDINGS, LLC, a Delaware
limited liability company,

      Plaintiff/Counterclaim Defendant,

v.                                                                                    Case No.: 1:25cv23486

SDC HOLDINGS LLC, a Florida limited liability
Company; DAVID E. SINOPOLI, an individual;
HI-NOTE PRODUCTION & CONSULTING
LLC, a Florida limited liability company;
DAVIDE L. DANESE, an individual; FULL
CIRCLE F&B LLC, a Florida limited liability
Company; JOSE G. COLOMA CANO, an
Individual; and THE HAPPY COMPANY LLC,
a Florida limited liability company,

      Defendants/Counterclaim Plaintiffs.

      -and-

PASQUALE ROTELLA, an individual,

      Counterclaim Defendant.

_____/

## <u>COUNTERCLAIM</u>

      Defendants/Counterclaim Plaintiffs SDC Holdings, LLC ("SDC"), David E. Sinopoli, HI-

Note Production & Consulting, LLC ("HINote"), Davide L. Danese, Full Circle F&B LLC ("Full

Circle"), Jose G. Coloma Cano, and The Happy Company, LLC ("THC") (collectively, the "CDD

Parties") hereby file their counterclaim pursuant to Rule 15(a)(1)(A) against Insomniac Holdings,

LLC ("Insomniac") and Pasquale Rotella ("Rotella"), all individually, jointly and severally, and

in support state as follows:

## **NATURE OF THE LAWSUIT**

1.      This action arises from Insomniac's and Rotella's repeated betrayal of the CDD Parties in selfish pursuit of their own financial interest.

2.      The CDD Parties produce electronic music events in Miami.  Through their years of successful event production, the CDD Parties have built a strong reputation in the Miami music scene and relationships with major players in the international electronic music industry.

3.      Insomniac is an electronic music event promoter headquartered in Los Angeles. Rotella is Insomniac's Chief Executive Officer.

4.      When Rotella and Insomniac decided to expand Insomniac's operations into Miami, Rotella and Insomniac sought out the CDD Parties because of the CDD Parties' proven integrity, reputation, and track record of success in Miami.

5.      The CDD Parties have established a strong reputation and goodwill within the Miami community through years of dedicated investment of time, resources, and expertise.  Each year, the CDD Parties provide opportunities for more than 150 local Miami artists and performers to showcase their work at III Points, one of the city's premier annual music festivals.[1]  In addition to cultural contributions, the CDD Parties organize and host a range of community-focused initiatives, including wellness programs, educational workshops such as ongoing free women's self-defense classes, and collaborative events with local organizations like Miami-Dade Animal Services.  Their commitment to public service extends further—on November 10 of this year, David Sinopoli will be honored by Gift of Life for registering 297 individuals to the bone marrow

---

[1]    https://www.miaminewtimes.com/music/palomino-blond-troy-kurtz-donzii-and-more-miami-talent-at-iii-points-18003455.

transplant registry through the CDD Parties' initiatives.[2]  The CDD Parties also actively support local first responders and have been formally recognized by the Hialeah Fire Department for their contributions.

6.     Rotella and Insomniac required the CDD Parties' expertise, goodwill, and reputation in the Miami music scene in order to expand Insomniac's operations into Miami.  But, unbeknownst to the CDD Parties, Rotella and Insomniac did not intend to build on the CDD Parties' reputation and goodwill in Miami; rather, Rotella and Insomniac intended to expend every ounce of the CDD Parties' reputation and goodwill in order to maximize profits.

7.     Under Rotella's leadership, Insomniac and the CDD Parties joined forces to develop and operate live event venues located in Miami-Dade County, Florida, including Club Space, III Points, and Factory Town.

8.     What began as a collaborative relationship between Insomniac and the CDD Parties quickly devolved into a calculated effort by Rotella and Insomniac to secure control of Factory Town for Insomniac's benefit (and for the benefit of Rotella) and to systematically attempt to strip the CDD Parties of any meaningful opportunity to earn a return on their interest in Factory Town, for which the CDD Parties worked tirelessly.

9.     In reliance on Insomniac's and Rotella's repeated material assurances of mutual benefit and fair economic terms, the CDD Parties worked extensively to conceptualize Factory Town's business model, structure revenue-sharing arrangements, and facilitate the venue's operations. Unbeknownst to the CDD Parties, however, Insomniac's and Rotella's actual intent was to gain full control of the Factory Town venue, obtain a lease for the Factory Town property under only Insomniac's name, and then unilaterally rewrite the deal under which the CDD Parties

---

[2] https://www.instagram.com/p/DN3eoNaWBXj/.

had performed and under which the CDD Parties exceeded all expectations, leaving the CDD Parties with all the work, all the risk, and a drastically reduced upside.

10.     Once Rotella and Insomniac secured the lease to Factory Town (advising the CDD Parties the entire time that the CDD Parties were 49% partners/owners of the lease, on which advice the CDD Parties reasonably relied) and thereby controlled access to the venue and its operational future, Rotella and Insomniac began methodically and unilaterally altering the terms of Insomniac's long-standing agreement with the CDD Parties.  Rotella and Insomniac attempted to change key revenue splits in Insomniac's favor.  Rotella and Insomniac attempted to reduce and/or remove the CDD Parties' management fees.  Rotella and Insomniac attempted to revoke and/or limit operational rights previously granted to the CDD Parties.  Rotella and Insomniac attempted to restructure the financial model to ensure that, no matter how successful Factory Town became, the CDD Parties would make less money, contrary to the terms of the CDD Parties and Insomniac's agreement under which the CDD Parties had fully performed for the benefit of Insomniac and Rotella.

11.     Rotella and Insomniac's changes to the agreement were not the product of unforeseen market shifts or mutual renegotiation.  Rather, Rotella and Insomniac deliberately executed a plan to secure the critical asset—the lease of Factory Town—for Insomniac and then squeeze the CDD Parties.  Rotella and Insomniac leveraged Insomniac's control of the Factory Town lease to unilaterally impose new terms on the CDD Parties, intending that the CDD Parties— having invested significant time, resources, and reputational equity into Factory Town—would be trapped and forced to accept ever-worsening conditions.

12.     The CDD Parties were prepared to hold Insomniac and Rotella accountable for their wrongful conduct for their violations of Florida law.  But in an attempt to amicably sever ties and

avoid costly litigation for both sides, the parties pursued mediation before Judge Michael A. Hanzman (ret.).

13.     The parties settled all disputes related to Factory Town and executed a settlement agreement further delegating jurisdiction to Judge Hanzman for certain disputes (the "Settlement Agreement").

14.     Despite the CDD Parties' desire to never again work with Insomniac and Rotella on Factory Town and be subject to their unethical, predatory, and manipulative business practices, the CDD Parties also agreed, in the spirit of good faith and in reliance on Rotella's repeated material assurances of his intention to collaborate in good faith, to see the Factory Town partnership through 2025 by working with Insomniac to produce two "Factory Town Wind-Up Events": Hocus Pocus and Art Basel.

15.     The Settlement Agreement at paragraph 6 provides that Insomniac and the CDD Parties "shall collaborate on" Hocus Pocus and Art Basel, "which shall be held at Factory Town pursuant to the following terms."

16.     The Settlement Agreement at paragraph 6(c)(iii) provides that "[t]he Parties will cooperate in good faith to prepare an agreed upon line-item budget of estimated event revenue and expenses to be utilized for the purposes of forecasting and ultimately determining final figures to allocate payments for Hocus Pocus and Art Basel."

17.     The Settlement Agreement at paragraph 6(a) provides that, for Hocus Pocus, the CDD Parties "shall initially propose all talent/artists and submit proposed offers/contracts/agreements at market rates to Insomniac prior to execution for their review and approval, such approval not to be unreasonably withheld."

18.     The Settlement Agreement at paragraph 6(b)(v) provides that, for Art Basel, the

CDD Parties "shall initially propose all talent/artists and submit proposed offers/contracts/agreements at market rate to Insomniac prior to execution for their review and approval, such approval not to be unreasonably withheld."

19.    Unfortunately, and as alleged in detail below, Rotella and Insomniac, having no respect for the Settlement Agreement and desiring to sabotage the CDD Parties, immediately breached their duties and obligations under the Settlement Agreement to collaborate with the CDD Parties on Hocus Pocus and Art Basel.

20.    Contrary to Rotella and Insomniac's false allegation that Judge Hanzman "ruled" that there was "no breach by Insomniac" and "wholly rejected" the CDD Parties' positions, Judge Hanzman's July 31, 2025 Order actually confirms that Insomniac and Rotella had improperly "made offers to artists," that Insomniac and Rotella had to be forced to comply with their obligation to cooperate with the CDD Parties in booking talent ("Insomniac shall respond to the CDD Parties' list of Talent for Art Basel within two business days of receipt of same indicating its approval or the basis for its objections, if any."), and that Judge Hanzman did not rule in favor of Insomniac but instead "reserve[d] final ruling on" the issue of budget allocations for Hocus Pocus and Art Basel.

21.    Notably, Judge Hanzman wrote in a subsequent email that he "agree[d]" with the CDD Parties that "a Court will have to adjudicate whether [the CDD Parties were] relieved from any obligations to perform (i.e. put on the events) due to a prior material breach on the part of Insomniac."

22.    Left unsaid by Judge Hanzman is the fact that the CDD Parties are also entitled to hold Insomniac and Rotella accountable for their wrongful conduct.  Insomniac and Rotella promised the CDD Parties collaboration and fairness in their partnership for Hocus Pocus and Art

Basel, but instead delivered betrayal and economic sabotage—a pattern if there ever was one.

## PARTIES, JURISDICTION, AND VENUE

23.     This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332, as this dispute is between citizens of different states and the amount in controversy exceeds the sum of $75,000, exclusive of interest, costs, and reasonable attorneys' fees.

24.     Venue is proper in the United States District Court for the Southern District of Florida pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred in this district.

25.     Counterclaim Defendant Insomniac is a Delaware limited liability company, whose members are: (i) Pasquale Rotella, a citizen of California; (ii) Live Nation Worldwide, Inc., a Delaware corporation with its principal place of business in California; (iii) Owl Holding, Inc., a Nevada corporation with its principal place of business in California; and (iv) Owl Entertainment, Inc., a Delaware corporation with its principal place of business in California.  Thus, Insomniac is a citizen of Delaware, Nevada, and California.

26.     As alleged below, Insomniac submitted itself to the jurisdiction of the courts of the State of Florida by:  (a) operating, conducting, engaging in, or carrying on business ventures in Miami-Dade County, Florida; (b) committing tortious acts within Miami-Dade County, Florida by unjustly retaining the benefits conferred to it by the CDD Parties through the CDD Parties' efforts and investment in Hocus Pocus and Art Basel; and (c) breaching its Settlement Agreement with the CDD Parties relating to Hocus Pocus and Art Basel in Miami-Dade County, Florida by failing to perform acts required by the Settlement Agreement to be performed in Miami-Dade County, Florida.

27.     Counterclaim Defendant Rotella is an individual domiciled in the State of

California.

28.     As alleged below, Rotella submitted himself to the jurisdiction of the courts of the State of Florida by:  (a) operating, conducting, engaging in, or carrying on business ventures in Miami-Dade County, Florida; and (b) committing tortious acts within Miami-Dade County by fraudulently inducing the CDD Parties to enter the Settlement Agreement with Insomniac, negligently misrepresenting to the CDD Parties material facts regarding his and Insomniac's intentions with respect to Hocus Pocus and Art Basel in Miami-Dade County, Florida, and breaching his fiduciary duties to the CDD Parties.

29.     Counterclaim Plaintiff SDC is a Florida limited liability company, whose members are David E. Sinopoli, a citizen of Florida, Davide L. Danese, a citizen of Florida, and Jose G. Coloma Cano, a citizen of Florida.  Thus, SDC is a Florida citizen for purposes of diversity of citizenship.

30.     Counterclaim Plaintiff HINote is a Florida limited liability company, whose sole members is David E. Sinopoli, a citizen of Florida.  Thus, HINote is a Florida citizen for purposes of diversity of citizenship.

31.     Counterclaim Plaintiff Full Circle is a Florida limited liability company, whose sole member is Davide E. Danese, a citizen of Florida. Thus, Full Circle is a Florida citizen for purposes of diversity of citizenship.

32.     Counterclaim Plaintiff THC is a Florida limited liability company, whose sole member is Jose G. Coloma Cano, a citizen of Florida.  Thus, THC is a Florida citizen for purposes of diversity of citizenship.

33.     Counterclaim Plaintiff David E. Sinopoli is an individual domiciled in Florida.

34.     Counterclaim Plaintiff Davide L. Danese is an individual domiciled in Florida.

35.     Counterclaim Plaintiff Jose G. Coloma Cano is an individual domiciled in Florida.

36.     Complete diversity exists between the Parties.

37.     All conditions precedent to the filing of this Counterclaim have been fulfilled, waived, or excused.

38.     The CDD Parties have retained undersigned counsel to represent them in this action and are obligated to pay undersigned counsel a reasonable fee for their services.

## GENERAL ALLEGATIONS

I.     **Insomniac and Rotella's History of Criminal and Civil Misconduct**

39.     Insomniac and Rotella's past business dealings and conduct provide important context for their actions towards the CDD Parties.  Insomniac and Rotella's deceit in the Factory Town partnership and their failure to abide by the Settlement Agreement are unfortunately only the latest instances of Insomniac and Rotella's unscrupulous business dealings and conduct.  As detailed below, Rotella was indicted for bribing government officials and was found guilty of a misdemeanor conflict-of-interest charge, Rotella and Insomniac have been sued for ripping off a business partner, and Rotella and Insomniac are well-known in the electronic music industry for their greed and mistreatment of business partners, colleagues, and employees alike.

A.     **Rotella's Criminal History**

40.     In 2012, Rotella was indicted on felony charges of bribing a public employee, embezzlement, and conspiracy in connection with Insomniac events at Los Angeles Memorial Coliseum.

41.     Prosecutors alleged that Rotella and his co-conspirators agreed to pay a government official in exchange for the government official to ensure access to the Coliseum and low rates for Insomniac's events.

42.     Prosecutors alleged that, in exchange for at least $1.9 million in bribes, Rotella received assistance from the government official in keeping expenses down for Insomniac's events at the Coliseum, a "tireless advocate" for keeping Insomniac's events at the Coliseum after a 15-year-old girl died after overdosing on Ecstasy at Insomniac's June 2010 Electric Daisy Carnival rave at the Coliseum, and a "mole" who provided Rotella inside information such as which government officials were for or against Insomniac, and which government officials to support financially with political contributions.

43.     In 2016, Rotella reached a plea deal in which he pleaded no contest to a single misdemeanor conflict-of-interest charge, paid $150,000.00 to Los Angeles County, and served three years of probation.  Rotella was able to avoid jailtime only because prosecutors "mishandled evidence."

44.     Under California law, Rotella's plea of no contest is "the same as a plea of guilty" and means the court found Rotella "guilty."  Cal. Penal. Code § 1016(3).

45.     Despite being found guilty, Rotella brags that he "beat" the indictment and that the indictment is a "badge of honor."

**B. Rotella and Insomniac's History of Unfair Business Practices**

46.     In 2011, the Los Angeles Memorial Coliseum Commission sued Insomniac, alleging that Insomniac "engaged in unlawful and/or unfair business practices" by underpaying the Coliseum more than $1 million in concert revenue in connection with Rotella's criminal scheme to bribe a government official to ensure low-cost access to the Coliseum.

47.     In 2017, Rotella agreed to pay $3.5 million to settle the lawsuit.  Rotella agreed to settle the case on the eve of trial after the court denied Insomniac and Rotella's motion to exclude evidence that the government official Rotella bribed was barred from having a financial interest in government contracts he oversaw.

### C. Rotella's Self-Centeredness, Volatility, and Predatory Behavior

48.     Rotella is not just a criminal and a fraud.  He is also insufferable to work with.  The CDD Parties have had the misfortune of witnessing and experiencing first-hand Rotella's cruelty, self-centeredness, and volatility towards his business partners and/or employees.

49.     Rotella's self-absorbed mindset makes him and Insomniac impossible to collaborate with.

50.     Rotella and Insomniac's upper management constantly demean, berate, and insult his business partners and/or employees.

51.     Rotella and Insomniac's behavior damages the CDD Parties' brand and reputation. For example, there is a series of social media posts accusing Rotella and Insomniac's upper management of leveraging their position of power and "status."[3]

52.     Rotella and Insomniac are infamous inside the electronic music community for their predatory tactics and greed.  For example, Insomniac's claims against the CDD Parties in this case have ignited an immediate and fierce backlash against Rotella and Insomniac on social media, including the following illustrative comments:

- "*Imagine profiting off rave kids for decades, creating a monopoly, trying to trademark PLUR then playing victim - this isn't a lawsuit, it's a tantrum with legal fees*";

- "*@pasqualerotella is this the kind of company you want to run?? One that is threatened by LOCAL Miami events?? I'm not sure you're in the place to be the judge on what is considered greed??*";

- "*A case of greed? This from the guy that had us depositing $20 to get 9 ezoo bucks then waters are $10*";

- "*Corporate greed from a company in California has slowly but surely sucked the soul of Miami's center of dance and music*";

- "*Insomniac is trying to become a monopoly and run house/dance music as a whole. There is no Factory Town without Miami Rebels.  There is no*

---

[3] *E.g.*, https://www.tiktok.com/@lyssjustlivingg/video/7535243756681923870?_r=1&_t=ZT-8z4FsqzznOx.

11

> *Club Space. There is no Miami scene. Keep it Local!*";

- "*Very funny coming from the guy who tried to trademark PLUR lol*";
- "*Insomniac's continued greed and disingenuous behavior is just another example of out of state businesses trying to steal from Miami's best*".[4]

## II.     The CDD Parties and Insomniac's Club Space and Factory Town Partnerships

### A.  The Club Space Partnership

53.     In 2016, the CDD Parties took over the operation of Club Space, a dance club and entertainment venue located in Miami-Dade County, Florida.

54.     Club Space experienced significant growth and success under the CDD Parties' management. The CDD Parties grew Club Space's reputation nationally and internationally.

55.     In 2018, Insomniac and Rotella sought to acquire Club Space because of the venue's success under the CDD Parties' leadership.  Insomniac and Rotella emphasized that Insomniac viewed Insomniac's acquisition of Club Space as an investment in the CDD Parties as partners, not as an investment in the Club Space property.

56.     In 2018 and 2019, the CDD Parties, Rotella, and Insomniac met on multiple occasions to discuss terms of a potential deal.

57.     In July 2019, Insomniac purchased a 51% percent interest in Club Space, and the CDD Parties and their investors retained a 49% interest in Club Space.

58.     As Rotella said in a press release announcing the Club Space partnership, the CDD Parties would still be "running the show" and Insomniac and the CDD Parties would "together . . . set the bar for entertainment in Miami."

59.     Contrary to Insomniac's false allegation that Insomniac's purported "guidance, strategic partnership, and resources" have "increased Club Space's annual revenue by over **700%**

---

[4] https://www.instagram.com/p/DNn0mbUN4os/?igsh=NWdhZWVlemRndnY2

in just six years," Club Space's success is 100% attributable to the CDD Parties, as Insomniac's only involvement in Club Space has been to collect profit.

**B. The Factory Town Partnership**

60.     In the summer of 2019, the CDD Parties met with the owner of an abandoned mattress factory in the Hialeah suburb of Miami.  The CDD Parties reviewed and marked-up the site plan, toured the site, brought talent agents, artists and managers to visit the site, and began concept planning for what would become Factory Town.

61.     In September 2019, the CDD Parties took Rotella on a tour of the Factory Town property with the intention of partnering with Insomniac to produce events at Factory Town.

62.     During the tour of the Factory Town property, Rotella expressed enthusiasm to the CDD Parties about the opportunity for the CDD Parties and Insomniac to partner to produce events at Factory Town.

63.     After Rotella's tour of the Factory Town property, the CDD Parties and Insomniac agreed to partner to produce events at Factory Town.

64.     Between March 2020 and December 2024, the CDD Parties and Insomniac partnered to produce more than a dozen events at Factory Town.

65.     Through its substantial investment in time, expertise, and resources, the CDD Parties established Factory Town as a premier event venue in Miami.

66.     The CDD Parties transformed an abandoned mattress factory in an unknown part of Hialeah into a popular and reputable entertainment venue.

67.     Through the CDD Parties' efforts, Factory Town built high brand equity in the music industry, among artists, mangers, and agents, and on social media platforms.

68.     Contrary to Insomniac's false allegation that the CDD Parties "failed to disclose" that the CDD Parties took a position in the real estate of the Factory Town venue, the CDD Parties

proposed that Insomniac join the CDD Parties in the purchase of the real estate.  Insomniac declined the CDD Parties' proposal.

69.     From Factory Town's inception to the present, Insomniac has never produced an event at Factory Town but has instead merely provided funding.  The CDD Parties—not Insomniac—spent months planning, marketing, and booking performers for every Factory Town event.

70.     For example, when Insomniac informed the CDD Parties in August 2022 that it had decided to pull out of and withdraw funding for the planned October 2022 Hocus Pocus event at Factory Town, the CDD Parties single-handedly funded and produced the event to prevent its cancellation and the resulting reputational harm to Hocus Pocus and Factory Town.  Hocus Pocus 2022 was a resounding success under the CDD Parties' sole management, demonstrating and reinforcing that Insomniac is merely a source of funding and that Factory Town's success was built on the CDD Parties' efforts and expertise.

71.     Rotella and Insomniac responded to Factory Town's growing profitability, reputation, and future potential by complaining that the CDD Parties were making "too much money" on Factory Town events.

72.     To ensure the CDD Parties did not continue to make "too much money" on Factory Town events, Rotella and Insomniac decided to change the terms of Insomniac and the CDD Parties' future partnerships for Factory Town events and to obtain an exclusive lease to Factory Town that Insomniac could leverage against the CDD Parties.

73.     Apparently still convinced the CDD Parties were making "too much money" even under the new terms that Insomniac and Rotella had proposed, Insomniac and Rotella determined the CDD Parties should instead be paid nothing.

74.     Rotella and Insomniac erased the CDD Parties' earned management fees from prior Factory Town event financials and leveraging the Factory Town Lease to wipe out the CDD Parties' profit distributions owed from prior Factory Town events.  In particular, Rotella and Insomniac unilaterally applied the event profits to pay off Insomniac's Factory Town Lease and unilaterally wiped away the CDD Parties' management fees.

75.     Based on Rotella and Insomniac' failure to pay the millions of dollars owed to the CDD Parties for prior Factory Town events, the CDD Parties 49% share of the proceeds generated from the Factory Town Property, and the CDD Parties' 49% interest in the Factory Town Lease, the CDD Parties prepared to initiate litigation against Insomniac and Rotella.

## III.     The Settlement Agreement

76.     Prior to filing suit against Insomniac and Rotella, Insomniac and the CDD Parties attended a sixteen-hour mediation with Judge Hanzman on June 2, 2025.  Rotella attended the mediation via Zoom. Rotella's agents, including Insomniac's general counsel, attended the mediation in person.

77.     During the mediation, Rotella, through his agents, represented to the CDD Parties that it was Rotella's and Insomniac's intention to collaborate in good faith with the CDD Parties on Hocus Pocus and Art Basel.

78.     The Parties settled and left mediation with a binding Term Sheet of basic material terms and a time-limited agreement to execute the full Settlement Agreement, reserving jurisdiction to Judge Hanzman if the Parties could not finalize the Settlement Agreement.  A true and correct copy of the Term Sheet is attached hereto as **Exhibit A**.

79.     During the parties' negotiations in finalizing the Settlement Agreement, Rotella, through his agents, represented to the CDD Parties that it was Rotella's and Insomniac's intention to collaborate in good faith with the CDD Parties on Hocus Pocus and Art Basel.

80.     One month later, on July 2, 2025, the Parties executed a final and binding Settlement Agreement settling all disputes related to Factory Town.  A true and correct copy of the Settlement Agreement is attached hereto as **Exhibit B**.

81.     Under the binding Term Sheet and Settlement Agreement, Insomniac agreed to pay the CDD parties "the total sum of two million nine hundred thousand dollars ($2,900,000.00) (the '**Settlement Payment**') as provided herein.  The Settlement Payment shall be paid from the funds currently held in 1306 Lounge, LLC, by or before June 20, 2025."  The Settlement Payment was paid "in consideration and satisfaction of all sums" owed to the CDD Parties for the Factory Town Partnership:

**Binding Term Sheet**

1.   Payment by Insomniac to SDC Consulting LLC ("SDC") of $2.9 million  by or before June 20, 2025.

**AGREED TERMS**

1.   Payment by Insomniac.

     (a)   In consideration for the promises and covenants herein, Insomniac will pay SDC the total sum of two million nine hundred thousand dollars ($2,900,000.00) (the "**Settlement Payment**") as provided herein. The Settlement Payment shall be paid from the funds currently held in 1306 Lounge, LLC, by or before June 20, 2025.

     (b)   On June 20, 2025, SDC shall cause or direct 1306 Lounge, LLC, to remit the Settlement Payment to SDC, with the balance of funds currently held by 1306 Lounge, LLC for the benefit of Insomniac, to be remitted to Insomniac immediately after SDC's receipt of the Settlement Payment.

82.     Contrary to Insomniac's misleading insinuation that the CDD Parties acted improperly when they "helped themselves by taking nearly three millions dollars from the 1306 Lounge, LLC bank account without notifying Insomniac or Judge Hanzman," the CDD Parties had an absolute right under the binding Term Sheet and the Settlement Agreement "to cause or direct

1306 Lounge, LLC to remit the Settlement Payment to" the CDD Parties "by or before June 20, 2025." And in fact, pursuant to the Settlement Agreement, the CDD Parties simultaneously paid Insomniac "the balance of funds"—approximately $2,700,000.00—from 1306 Lounge, LLC.

83. Further, and consistent with Rotella's and Insomniac's representations during the mediation and the negotiations leading up to the final Settlement Agreement, the Settlement Agreement provides that the CDD Parties and Insomniac "shall collaborate on" Hocus Pocus and Art Basel. In connection with these two "Factory Town Wind-Up Events," the Settlement Agreement imposed duties on Insomniac to cooperate in good faith with the CDD Parties.

84. The Settlement Agreement provides that "[t]he Parties will cooperate in good faith to prepare an agreed upon line-item budget of estimated event revenue and expenses to be utilized for the purposes of forecasting and ultimately determining final figures to allocate payments for Hocus Pocus and Art Basel" (the "Good Faith Provision").

85. The Settlement Agreement further provides that, for both Hocus Pocus and Art Basel, the CDD Parties "shall initially propose all talent/artists and submit proposed offers/contracts/agreements at market rates to Insomniac prior to execution for their review and approval, such approval not to be unreasonably withheld" (the "Reasonable Approval Provision").

86. Hocus Pocus was scheduled for October 31 – November 2, 2025 and Art Basel was scheduled for December 3-7, 2025. Given the immense amount of planning required to successfully produce these events, time was of the essence in finalizing a budget and locking-in talent/artists.

### A. Insomniac Immediately Breaches the Settlement Agreement's Good Faith and Reasonable Approval Provisions

87. After the mediation, Insomniac immediately began violating the Settlement Agreement's Good Faith and Reasonable Approval Provisions.

17

88.     Contrary to Rotella's representations at the mediation, Rotella's and Insomniac's intent was never collaboration, but sabotage.

### 1.  Insomniac Breaches the Good Faith Provision

89.     After the Settlement Agreement was executed, the parties remained unable to agree to a line-item budget of estimated even revenue and expenses to be utilized for the purposes of forecasting and ultimately determining final figures to allocate payments for Hocus Pocus and Art Basel.

90.     Insomniac insisted that, as the landlord of Factory Town, it was only responsible for bearing the cost of permanent venue staff, existing permanent infrastructure, and the cost of the bar staff and related bar expenses, with the CDD Parties bearing the remaining costs of putting on Hocus Pocus and Art Basel.

91.     Under Insomniac's proposed allocation of expenses, it would be highly unlikely for the CDD Parties to make a profit on Hocus Pocus and Art Basel despite the CDD Parties' expenditure of thousands of hours of manpower and investment of their brand and marketing.

92.     Pursuant to the Settlement Agreement, the Parties set a hearing before Judge Hanzman on July 23, 2025 to evaluate the Parties' respective positions.

93.     At the July 23 hearing, Judge Hanzman ordered the Parties to "meet and confer" and "try to put a number to" each line item "so we're not dealing in the abstract."

94.     Pursuant to Judge Hanzman's order, the CDD Parties and Insomniac met and conferred on July 28, 2025.  During the July 28 meeting, Insomniac agreed to provide "full line item expenses and venue budget items" because the numbers from prior years' events could not be used for many of the line item expenses:

> On Mon, Jul 28, 2025 at 4:55 PM David Sinopoli <david.sinopoli@gmail.com>
> wrote:
> Hi Ian + Matt,
>
> Thank you for the call today regarding Hocus Pocus and our Art Basel events.
>
> As agreed, you'll be getting back to us with the full line item expenses and venue
> budget items.
> If we receive everything by the end of today, we can jump on a Zoom call first
> thing tomorrow to review and come to multiple decisions—including if we
> proceed with Circoloco.
>
> Additionally, many of the line item costs from last year are no longer applicable,
> as you're working with different vendors and vendor relationships this year.
>
> Best,
>
> CDD

95.     On July 29, the CDD Parties emailed Insomniac, requesting that Insomniac please

send the promised budget information:

> On Tue, Jul 29, 2025 at 3:31 PM David Sinopoli <david.sinopoli@gmail.com> wrote:
> Hi guys,
>
> Following up here. Can you please see these sheets?
>
> ---
>
> David Sinopoli

Insomniac did not respond to this email.

96.     On July 30, after the CDD Parties again emailed Insomniac requesting the budget

information, Insomniac sent a spreadsheet that merely "highlighted the cost savings" rather than

provide actual 2025 budgeted numbers.

97.     On July 31, the CDD Parties responded by requesting Insomniac to "take a moment

to fill in the 2025 budgeted numbers as you believe they are actually meant to be—not what you

believe represents a savings—and share that version with us":

On Thu, Jul 31, 2025 at 2:33 PM David Sinopoli <david.sinopoli@gmail.com> wrote:
Hi Matt,

Please — we're still having trouble understanding your Excel sheet. It would mean a lot if you could take a moment to fill in the 2025 budgeted numbers as you believe they are actually meant to be — not what you believe represents a savings — and share that version with us.

Also, just to clarify, the total for 2024 was $300,000, not $400,000.

98.     Insomniac refused, stating that it was the CDD Parties' "responsibility to propose a budget" for Hocus Pocus and Art Basel":

On Thu, Jul 31, 2025 at 5:53 PM Matthew Teper <matt.teper@insomniac.com> wrote:

1

Hey,

It's CDD's responsibility to propose a budget for HP and Basel. I've highlighted the cost savings under the signed settlement agreement. I think it would be best if you took that information and created the new budget. I do believe it's as easy as just taking the information I"ve shared and placing it in the historical column along with the proposed scaling and ancillaries. If you have any specific questions, please let me know.

MT

99.     In response, the CDD Parties explained:

---------- Forwarded message ---------
From: **David Sinopoli** <david.sinopoli@gmail.com>
Date: Thu, Jul 31, 2025 at 6:40 PM
Subject: Re: Follow-up on Hocus Pocus & Art Basel events
To: Matthew Teper <matt.teper@insomniac.com>
Cc: Ian Humphrey <ian.humphrey@insomniac.com>, Coloma Kaboomsky <colomarebel@gmail.com>, Davide LINK <danesemiami@gmail.com>

Matt, we simply cannot do our jobs without information from you.

We cannot be expected to develop an accurate and comprehensive budget beyond the venue rental fee, marketing expenses, and artist hospitality without full transparency into the operational side. In every prior year, we had full control and visibility, which allowed us to understand exactly how every dollar was being spent.

Now, with Insomniac directly negotiating, contracting, and paying for items — and not sharing those details — we are being asked to build a budget blindly. That's neither fair nor workable.

100.    Insomniac materially breached the Good Faith Provision by ignoring the CDD Parties and outright refusing to cooperate in preparing a line-item budget for Hocus Pocus and Art Basel.

## 2.   **Insomniac Breaches the Reasonable Approval Provision**

101.    On Monday, June 16, 2025, the CDD Parties emailed Insomniac "the current working offer sheet for Art Basel at Factory Town."

102.    The CDD Parties also granted Insomniac administrative access to a Google shared drive in which the CDD Parties provided a plethora of information, including all talent selection and offers, a talent grid, timetables and schedules, and a table client list.

103.    On June 24, 2025, Insomniac and the CDD Parties met in-person at the CDD

Parties' office.  As the CDD Parties memorialized in an email after the June 24 meeting:

From: **David Sinopoli** <david.sinopoli@gmail.com>
Date: Tue, Jun 24, 2025 at 3:45 PM
Subject: Thank You & Meeting Recap
To: David Sinopoli <david.sinopoli@gmail.com>, Davide LINK
<Danesemiami@gmail.com>, Matthew Teper <matt.teper@insomniac.com>, Coloma
Kaboomsky <colomarebel@gmail.com>


Hi Matt,

Thank you for coming by the office today.

It was great to meet in person and walk through the details for Hocus Pocus and Art Basel
together.


A few quick notes from our meeting for the record:


• You arrived around 1:45 PM and we met in front of the talent board to review each night's
lineup in detail.

• We discussed a few acts that may pass and explored potential work-ins if that ends up
being the case.
• Will Cormier stopped in and expressed his willingness to be of assistance if needed.

• I shared all of our current talent grids with you, and you mentioned you'd like to bring Stu
into the conversation once this recap was sent—especially since, while CDD has been
leading talent outreach for both Hocus Pocus and Art Basel, James Algate had directed Stu
to make talent offers for both events as well.

Appreciate your time and looking forward to the next steps.


104.    On June 25, 2025, Insomniac informed the CDD Parties that it had—independently

and without coordinating with the CDD Parties—made offers to various artists/talent for Art Basel.

105.    The CDD Parties immediately emailed Insomniac:

On Wed, Jun 25, 2025 at 5:18 PM David Sinopoli <david.sinopoli@gmail.com> wrote:

Hi Stu,

Thanks for this. I think it's best if we all meet together as soon as Davide and I return from Europe on July 9th, so we can align and decide how we want to continue these conversations.

In the meantime, please hold off on sending any offers or continuing any of the talent discussions until we're all together and can properly strategize as a team.

Appreciate your understanding. Looking forward to syncing up soon.

106.    On July 1, 2025, the CDD Parties emailed Insomniac:

From: **Coloma Kaboomsky** <colomarebel@gmail.com>
Date: Tue, Jul 1, 2025 at 6:37 PM
Subject: Talent Offers For Factory Town Events
To: Matthew Teper <matt.teper@insomniac.com>, Stuart Hackley <stu.hackley@insomniac.com>, David Sinopoli <david.sinopoli@gmail.com>, Davide Danese <danesemiami@gmail.com>

Hi Matt and Stu,

Gentlemen,

We just heard back from our attorney. The judge has confirmed that we are responsible for selecting talent and sending offers. While Insomniac does have the right to approve those offers, you cannot unreasonably withhold approval.

It has come to our attention that certain offers were improperly sent out without our involvement or consent. As such, we ask that you immediately retract all talent offers that have been issued to date. We will be handling all talent selections and offers for both the Hocus Pocus and Art Basel events at Factory Town.

Thank you — we look forward to working together on this in the utmost good faith.

Best regards,
CDD

--

**Coloma Kaboomsky**
**Link Miami Rebels | Space Invaders**
**III Points**
151 SE 1st St. Suite 201 Miami, FL 33131

107.    On July 7, 2025, the CDD Parties emailed Insomniac:

From: **Coloma Kaboomsky** <colomarebel@gmail.com>
Date: Mon, Jul 7, 2025 at 12:52 PM
Subject: Re: Information Request
To: Matthew Teper <matt.teper@insomniac.com>
Cc: David Sinopoli <david.sinopoli@gmail.com>, Davide Danese <danesemiami@gmail.com>

Hi Matt,

We're focused on getting you and Ian the information requested today and will share a link to the Drive by end of day with everything we've compiled so far.

As mentioned previously, we are currently prioritizing the Hocus Pocus Event and Factory Town handover materials, as we will not begin working on Art Basel until we're closer to the event and talent has been secured.

Also, just a reminder—Stu was supposed to rescind all offers that were sent for both Hocus and Basel. As of now, we understand this hasn't been done, and there is still confusion in the market. That really needs to be resolved quickly so it doesn't cause any further damage to our events.

Looking forward to moving forward.

Best,
C

108.    On July 10, 2025, the CDD Parties again emailed Insomniac:

From: **David Sinopoli** <david.sinopoli@gmail.com>
Date: Thu, Jul 10, 2025 at 11:21 PM
Subject: Re: Thank You & Meeting Recap
To: Matthew Teper <matt.teper@insomniac.com>
CC: Stuart Hackley <stu.hackley@insomniac.com>, Stuart Hackley <stuart.hackley@insomniac.com>,
Davide LINK <Danesemiami@gmail.com>, Coloma Kaboomsky <colomarebel@gmail.com>

Matt,

As you know, today was my first day back in Miami. I'm just getting caught up on emails and work.

I'll circle back tomorrow with some day and time options for us to connect.

That said, I want to reiterate the importance of confirming that Stu has withdrawn the talent offers. As previously discussed, those offers should not have been sent, and without them being formally withdrawn, there's not much to talk about. It continues to create confusion in the market and is actively hurting our Art Basel outreach, which falls under our responsibility.

We've made a clear and reasonable request to withdraw the offers in order to eliminate that confusion. Once that's resolved, we can be more productive.

In the meantime, our focus remains on Hocus Pocus, with marketing rolling out this coming week. Between that, the full Factory Town asset handover, and ongoing Club Space responsibilities, that's where our attention is right now.

Looking forward to reconnecting.

109.    On July 15, 2025, the CDD Parties again emailed Insomniac:

From: **David Sinopoli** <david.sinopoli@gmail.com>
Date: Tue, Jul 15, 2025 at 1:50 PM
Subject: Ongoing offer Issues- Factory Town/ Art Basel
To: Ian Humphrey <ian.humphrey@insomniac.com>, Matthew Teper <matt.teper@insomniac.com>,
Coloma Kaboomsky <colomarebel@gmail.com>, Davide LINK <Dane semiami@gmail.com>

Ian / Matt,

We just received another phone call—this time confirming that, as recently as one week ago, Stu sent an offer for Fischer for Art Basel at Factory Town.

This is now the fourth email we've sent regarding this issue. We previously asked—three times—that you retract the offers sent for Factory Town over both Hocus Pocus and Art Basel. These actions are creating significant confusion and will lead to further issues at Factory Town.

As a reminder, booking talent for these two events is our responsibility. We have no visibility into what offers you are sending, who you are sending them to, or how much you're offering. Meanwhile, we are paying $550,000 in rent for Art Basel, and the current actions are not only undermining the structure we agreed on, but are also not in line with the mediator's instructions or the terms of the settlement agreement.

Additionally, we believe this is contrary to the judge's ruling, and it appears that the event is being buried in expenses, which will greatly and adversely affect its profitability—or lack thereof.

Please address this immediately.

Best,
CDD

110.    During a July 16, 2025, phone call, the CDD Parties again requested Insomniac confirm that all outstanding offers had been rescinded, but Insomniac ignored the CDD Partes' request.

25

111.    The following day, on July 17, 2025, the CDD Parties emailed Insomniac again:

On Thu, Jul 17, 2025 at 12:38 PM Davide Danese <danesemiami@gmail.com> wrote:

Matt,

We need confirmation that all outstanding offers have been rescinded, including the offer to Circoloco. We've made this request five times via email and also addressed it again on yesterday's call.

It's becoming increasingly concerning that these repeated requests are being ignored.

Once we receive confirmation, we can move forward with a productive discussion - without that information we cannot make informed decisions.

CDD

112.    Insomniac responded:

On Thu, 17 Jul 2025 at 15:44, Ian Humphrey <ian.humphrey@insomniac.com> wrote:

Hi guys,

If I can jump in here, the discussion David and I had yesterday is that we would all make an effort to start working together and sharing information on bookings. I know that both sides feel they are in the dark a bit.

If you can please all get together so both sides can discuss openly what offers are out and collectively decide what bookings you want to make, it will be obvious which offers should be rescinded based on those decisions.

113.    The CDD Parties immediately replied:

From: **Davide Danese** <danesemiami@gmail.com>
Date: Thu, 17 Jul 2025 at 16:16
Subject: Re: 2025 Basel Bookings
To: Ian Humphrey <ian.humphrey@insomniac.com>
Cc: Matthew Teper <matt.teper@insomniac.com>, David Sinopoli
<david.sinopoli@gmail.com>, Coloma Kaboomsky <colomarebel@gmail.com>, Stuart
Hackley <stuart.hackley@insomniac.com>

Ian,
To be clear, everything we have is already in the Share Drive.
What we keep asking for, and continue to reiterate, is that the offers to Circoloco and
Fisher be formally rescinded, along with any other offers that were made without our
involvement.
Please confirm this has been done.

CDD

114.    That evening, based on Insomniac's repeated failures to rescind the offers it had
made behind the CDD Parties' backs, the CDD Parties contacted Judge Hanzman to request his
intervention to force Insomniac to comply with the terms of the Settlement Agreement.

115.    The following morning, on July 18, 2025, Insomniac finally provided the CDD
Parties a "not exhaustive list" of offers it had made to talent/artists for Hocus Pocus and Art Basel.

116.    Later that day, after reviewing Insomniac's "not exhaustive list" of offers, the CDD

Parties responded:

From: **Davide Danese** <danesemiami@gmail.com>
Date: Fri, 18 Jul 2025 at 12:52
Subject: Re: 2025 Basel Bookings
To: Stuart Hackley <stu.hackley@insomniac.com>
Cc: Coloma Kaboomsky <colomarebel@gmail.com>, David Sinopoli <david.sinopoli@gmail.com>, Ian
Humphrey <ian.humphrey@insomniac.com>, Matthew Teper <matt.teper@insomniac.com>, Stuart
Hackley <stuart.hackley@insomniac.com>

Stu, Matt, Ian,
We were never consulted before these offers were made, and we find the pricing to be unreasonable. This is a direct
violation not only of the settlement agreement but also of the judge's ruling.
We sent no fewer than four separate emails asking for the status of any talent offers, requesting full transparency, and
instructing that no offers be made—or that any offers already made be withdrawn. You *completely failed* to respond to any
of those requests. Not only did you ignore them, but you continued to act unilaterally and in direct contradiction to
everything we communicated.
Furthermore, Jordan,your attorney, just yesterday informed the judge that no such offers had been made.
This communication clearly proves that statement was false and a direct misrepresentation to the court.We do not agree
to any of these offers. Once again, you are acting in bad faith and in a manner that is both deceptive and contrary to the
settlement agreement and court order.
Lastly, you know very well, these offers go directly against the talent grid we shared with you and against offers we had
already extended.
This ongoing behavior is unacceptable.

CDD

117.    On July 23, 2025, the CDD Parties and Insomniac appeared before Judge Hanzman

the hearing the CDD Parties had requested as a result of Insomniac's refusal to cooperate in good

faith on the artist/talent selection for Hocus Pocus and Art Basel.

118.    During the July 23, 2025 hearing, Judge Hanzman confirmed that the parties were

"to coordinate and cooperate on talent," with the CDD Parties "taking the lead."  Judge Hanzman

ordered the CDD Parties to provide Insomniac with the CDD Parties' "full proposed talent grid"

by July 31, and ordered Insomniac to, "[w]ithin 48 hours . . . let them know whether you object to

them approaching or negotiating with anybody on that list and you are to give the basis for your

objection."  Judge Hanzman ruled that once the CDD Parties "have terms reached with this talent,"

the CDD Parties were to give Insomniac "the proposed contract and the proposed terms," and

Insomniac had to "approve the agreement or not within 48 hours of the details of the proposal and

the proposed contract."

119.     Also during the July 23, 2025 hearing, Judge Hanzman ordered Insomniac to send to the CDD Parties "by the end of the day today" the "actual written proposal" that Insomniac had already made to "CircoLoco." Judge Hanzman ordered that the CDD Parties were to then "immediately tell them what your objections are," and if the parties were unable to come up with a mutually agreeable restructured offer, then the Parties were to "come back and see me."

120.     Pursuant to Judge Hanzman's rulings during the July 23 hearing, the CDD Parties timely provided Insomniac with their full proposed talent grid.

121.     Pursuant to Judge Hanzman's rulings during the July 23 hearing, Insomniac sent the CDD Parties the proposal Insomniac had made to CircoLoco.

122.     Incredibly, Insomniac's proposal represented a 44% increase from the prior year's deal.  The CDD Parties therefore objected, explaining that Insomniac's proposal "does not reflect historical performance, venue capacity, or the reality of our shared structure" and that the CDD Parties therefore did "not wish to proceed with CircoLoco under these terms."

123.     Over the following week, the CDD Parties repeatedly—on at least three separate occasions—requested additional information from Insomniac regarding Insomniac's communications with CircoLoco.  But Insomniac ignored the CDD Parties' requests:

> On Mon, 28 Jul 2025 at 11:37, Davide Danese <danesemiami@gmail.com> wrote:
> Hi Ian,
>
> Good morning. Can you please confirm whether your team has had any communications with Circoloco since last Wednesday's hearing?
>
> If so, we'd appreciate clarity: please forward copies of all emails or other communications both to and from Circoloco.
>
> Additionally, if Circoloco has sent you the actual written proposal (not just a recap) for what they are now suggesting—or any prior written proposal—we'd like to review those as well.
>
> Thanks,
> CDD

From: **Davide Danese** <danesemiami@gmail.com>
Date: Tue, 29 Jul 2025 at 15:22
Subject: Re: Circoloco Art Basel Deal Terms
To: Ian Humphrey <ian.humphrey@insomniac.com>
Cc: Matthew Teper <matt.teper@insomniac.com>, David Sinopoli
<davidsinopoli@gmail.com>, Coloma Kaboomsky <colomarebel@gmail.com>


Hi Matt and Ian , following up on my request above.

**Davide Danese**
**Link Miami Rebels | Space Invaders**
Ph: 305.721.4896
linkmiamirebels.com | clubspace.com


On Jul 30, 2025 at 8:45 PM -0400, Davide Danese <danesemiami@gmail.com>, wrote:

Hey Stu and Matt , following up on Circoloco, we haven't seen the offer nor the contract ,
we haven't been looped into any conversations.


**Davide Danese**
**Link Miami Rebels | Space Invaders**
Ph: 305.721.4896
linkmiamirebels.com | clubspace.com


From: **Davide Danese** <danesemiami@gmail.com>
Date: Thu, 31 Jul 2025 at 13:40
Subject: Re: Circoloco Art Basel Deal Terms
To: Ian Humphrey <ian.humphrey@insomniac.com>, Stuart Hackley <stuart.hackley@insomniac.com>
Cc: Matthew Teper <matt.teper@insomniac.com>, David Sinopoli <davidsinopoli@gmail.com>, Coloma
Kaboomsky <colomarebel@gmail.com>


Ian and Matt , why is this request being ignored ?
We are sending this daily.

**Davide Danese**
**Link Miami Rebels | Space Invaders**
Ph: 305.721.4896
linkmiamirebels.com | clubspace.com

124.    During that same week, the CDD Parties repeatedly requested Insomniac provide

any other offers Insomniac had made to other artists/talent for Hocus Pocus and Art Basel.  But

Insomniac also ignored the CDD Parties' requests:

From: **David Sinopoli** <david.sinopoli@gmail.com>
Date: Thu, Jul 24, 2025 at 3:14 PM
Subject: Request for All Offers Related to Art Basel, Including Circoloco
To: Matthew Teper <matt.teper@insomniac.com>, Ian Humphrey <ian.humphrey@insomniac.com>,
Coloma Kaboomsky <colomarebel@gmail.com>, Davide LINK <Danesemiami@gmail.com>

Hi Ian and Matt,

Please send us a complete list of all offers that have been made for Art Basel.

We'd like full transparency on the outreach, offers and negotiations that have taken place so we can
properly review.

CDD

On Tue, Jul 29, 2025 at 3:22 PM Davide Danese <danesemiami@gmail.com> wrote:
Hey Stu , send us what you got please.

**Davide Danese**
**Link Miami Rebels | Space Invaders**
Ph: 305.721.4896
linkmiamirebels.com | clubspace.com

125.     Despite the CDD Parties' good faith efforts work with Insomniac, Insomniac engaged in a pattern of stonewalling and strategic silence.  Finally, on August 1, 2025, the CDD Parties informed Insomniac that they would no longer tolerate Insomniac's tactics:

From: **David Sinopoli** <david.sinopoli@gmail.com>
Date: Fri, Aug 1, 2025 at 1:58 PM
Subject: Re: Follow-up on Hocus Pocus & Art Basel events
To: Matthew Teper <matt.teper@insomniac.com>
Cc: Ian Humphrey <ian.humphrey@insomniac.com>, Coloma Kaboomsky <colomarebel@gmail.com>, Davide LINK <danesemiami@gmail.com>

Matt,

At this point, perhaps the most honest and appropriate response from our side would simply be: *"We shall not be responding to further emails regarding Factory Town."*

We gave this 200%, genuinely trying to approach things as partners — despite being repeatedly ignored, day after day. Your ongoing pattern of stonewalling and strategic silence has made it clear that your intent was never collaboration, but sabotage. We are confident that if the roles were reversed, and you were the ones being ignored, we'd receive a barrage of emails and demands - along with a flurry of "Notices from the Board". The difference is — we've maintained the common courtesy and decency to respond, and act in good faith- even when it's clear that respect hasn't been reciprocated.

Let's also be honest: the only reason we're getting any response from you now is because your attorney has already advised you of our position, and you're scrambling to appear cooperative — *after* repeated and material breaches on the part of Insomniac.

This is our final email regarding Factory Town. Please direct all future emails regarding Factory Town to our attorney's office.

Respectfully,
CDD

126.     Insomniac's conduct amounts to a material breach of its obligations under the Reasonable Approval Provision.  Because of Insomniac's intentional interference with the CDD Parties' duty to make the initial proposed offers to talent/artists, and because of Insomniac's decision to ignore the CDD Parties and Insomniac's absolute refusal to cooperate with respect to the selection of talent/artists,  it is impossible for the CDD Parties to work with Insomniac to produce Hocus Pocus and Art Basel.

127.     As a result of the actions and breaches set forth within this Counterclaim, the CDD

Parties have suffered special, compensatory, and consequential damages.

**COUNT I**
**BREACH OF CONTRACT**
**(Against Insomniac – Settlement Agreement)**

128.    The CDD Parties restate and reallege paragraphs 1–127 as if fully stated herein.

129.    The parties entered into the Settlement Agreement, a valid and enforceable contract under Florida Law.

130.    The CDD Parties have performed all of their obligations under the Settlement Agreement. Alternatively, the CDD Parties' performance under the Settlement Agreement was excused by Insomniac's material breaches of the Good Faith Provision and the Reasonable Approval Provision.

131.    Paragraph 6 of the Settlement Agreement requires Insomniac to collaborate with the CDD Parties on Hocus Pocus  and Art Basel. Collaboration on these two events was one of the central purposes for the parties entering the Settlement Agreement.

132.    Insomniac repeatedly failed to collaborate with the CDD Parties on Hocus Pocus and Art Basel.

133.    Insomniac thus materially breached it duty to collaborate with the CDD Parties and Hocus Pocus and Art Basel and also materially breached the Good Faith Provision and the Reasonable Approval Provision.

134.    As a result of Insomniac's refusal to collaborate with the CDD Parties on Hocus Pocus and Art Basel, and as a result of Insomniac's material breaches of the Good Faith Provision and the Reasonable Approval Provision, the CDD Parties been forced to plan Hocus Pocus and Art Basel without access to crucial information, jeopardizing the events and causing the CDD Parties to incur damages.

**WHEREFORE**, the CDD Parties respectfully requests that this Court:

(a)   Award the CDD Parties compensatory, special, and consequential damages; and

(b)   Award the CDD Parties such other and further relief as may be proper.

## COUNT II
## BREACH OF IMPLIED DUTIES OF GOOD FAITH AND FAIR DEALING
### (Against Insomniac - Settlement Agreement)

135.   The CDD Parties restate and reallege paragraphs 1–127 as if fully stated herein.

136.   Insomniac has materially breached the Settlement Agreement by repeatedly failing to collaborate with the CDD Parties on Hocus Pocus and Art Basel and by breaching the Good Faith Provision and the Reasonable Approval Provision.

137.   Based on the terms of the Settlement Agreement, the CDD Parties had a reasonable expectation that Insomniac would cooperate with them in good faith.

138.   Insomniac deliberately withheld its cooperation from the CDD Parties, knowing that doing so would leave the CDD Parties in the impossible position of planning and organizing Hocus Pocus and Art Basel without Insomniac's cooperation or access to necessary information.

139.   Insomniac's actions deprive the CDD Parties of the benefit of the Settlement Agreement—Insomniac's cooperation on Hocus Pocus and Art Basel.

**WHEREFORE**, the CDD Parties respectfully requests that this Court:

(a)   Award the CDD Parties compensatory, special, and consequential damages; and

(b)   Award the CDD Parties such other and further relief as may be proper.

## COUNT III
## BREACH OF FIDUCIARY DUTY OF LOYALTY
### (Against Insomniac - Partnership)

140.   The CDD Parties restate and reallege paragraphs 1–127 as if fully stated herein.

141.   The parties formed a partnership for the purpose of putting on the Hocus Pocus and Art Basel events.

142.    Insomniac owed a fiduciary duty of loyalty to the partnership under Section 620.8404, Fla. Stat.

143.    As a partner, Insomniac had a duty to refrain from dealing with the partnership as having an interest adverse to the partnership and to refrain from competing with the partnership.

144.    Insomniac refused to cooperate with the CDD Parties on Hocus Pocus and Art Basel.

145.    Further, Insomniac acted adversely to the partnership's interest by seeking to deepen its long-term relationship with CircoLoco outside of Hocus Pocus and Art Basel by making an unreasonably favorable offer to CircoLoco to perform at Art Basel.

146.    As a direct result of Insomniac's actions, the CDD Parties were forced to work on the events without the cooperation of their partner and without crucial information. Thus, the partnership was harmed and the CDD Parties suffered damages.

**WHEREFORE**, the CDD Parties respectfully requests that this Court:

(a)   Award SDC compensatory, special, and consequential damages; and

(b)   Award SDC such other and further relief as may be proper.

<u>**COUNT IV**</u>
<u>**BREACH OF FIDUCIARY DUTY OF CARE**</u>
**(Against Insomniac - Partnership)**

147.    The CDD Parties restate and reallege paragraphs 1–127 as if fully stated herein.

148.    The parties formed a partnership for the purpose of putting on Hocus Pocus and Art Basel.

149.    Insomniac owed a fiduciary duty of care to the partnership under Section 620.8404, Fla. Stat.

150.    As a partner, Insomniac had a duty to refrain from grossly negligent or reckless conduct, intentional misconduct, or knowing violation of law in dealing with the partnership.

151.   Insomniac engaged in intentional misconduct toward the partnership and the CDD Parties as its partners by refusing to cooperate with CDD Parties on Hocus Pocus and Art Basel.

152.   As a direct result of Insomniac's actions, the CDD Parties were forced to work on the events without the cooperation of their partner and without crucial information. Thus, the partnership was harmed and the CDD Parties suffered damages.

**WHEREFORE**, the CDD Parties respectfully requests that this Court:

(a)   Award the CDD Parties compensatory, special, and consequential damages; and

(b)   Award the CDD Parties such other and further relief as may be proper.

<u>COUNT V</u>
<u>BREACH OF DUTY OF GOOD FAITH AND FAIR DEALING</u>
**(Against Insomniac - Partnership)**

153.   The CDD Parties restate and reallege paragraphs 1–127 as if fully stated herein.

154.   The parties formed a partnership for the purpose of putting on Hocus Pocus and Art Basel .

155.   Insomniac owed a duty of good faith and fair dealing to the partnership under Section 620.8404, Fla. Stat.

156.   As a partner, Insomniac had a duty to discharge its duties to the partnership with an obligation of good faith and fair dealing.

157.   The CDD Parties had a reasonable expectation that, as a partner, Insomniac would cooperate with them in good faith.

158.   Instead, Insomniac deliberately withheld its cooperation from the partnership and its partners, the CDD Parties, knowing that doing so would leave the CDD Parties in the impossible position of planning and organizing Hocus Pocus and Art Basel without Insomniac's cooperation or access to necessary information.

159.   As a direct result of Insomniac's refusal to cooperate with its partners in good faith,

the partnership was harmed and the CDD Parties suffered damages.

**WHEREFORE**, the CDD Parties respectfully requests that this Court:

(a)   Award the CDD Parties compensatory, special, and consequential damages; and

(b)   Award the CDD Parties such other and further relief as may be proper.

**COUNT VI**
**UNJUST ENRICHMENT**
**(Against Insomniac)**

160.    The CDD Parties restate and reallege paragraphs 1–127 as if fully stated herein.

161.    This is an action for unjust enrichment against Insomniac, and is brought in the alternative to Count I.

162.    The CDD Parties have already done significant work on Hocus Pocus and Art Basel.

163.    The CDD Parties conferred a benefit directly upon Insomniac by investing the CDD Parties' time, effort, expertise, and resources into Hocus Pocus and Art Basel.

164.    By not compensating the CDD Parties for the CDD Parties' investment of time, effort, expense, and resources into Hocus Pocus and Art Basel, Insomniac has realized this benefit as the CDD Parties' expense.

165.    Insomniac is not justified in failing to pay the CDD Parties' for their investment of time, expertise, and resources into Hocus Pocus and Art Basel.

166.    Insomniac has knowingly and voluntarily accepted, retained, and enjoyed the benefits conferred upon it by the CDD Parties.  Insomniac has done so knowing that the CDD Parties expected to be paid for their investment in Hocus Pocus and Art Basel.

167.    The CDD Parties are entitled to payment for their investment of time, effort, expertise, and resources through Insomniac's acceptance of the CDD Parties' investment and/or through the parties' course of dealing.

168.     Insomniac's actions have resulted in a windfall for Insomniac, in that (1) Insomniac retained the benefit of the CDD Parties' investment of time, effort, expertise, and resources into Hocus Pocus and Art Basel, and (2) Insomniac has failed to pay the CDD Parties for their investment in these events.

169.     Under these circumstances, it would be inequitable for Insomniac to fail to compensate the CDD Parties for the CDD Parties' investment in Hocus Pocus and Art Basel.

170.     The CDD Parties have no remedy other than this lawsuit to recover for Insomniac's unjust enrichment.

171.     Insomniac is therefore liable to the CDD Parties for disgorgement of its unjust enrichment for failing to pay the CDD Parties for the CDD Parties' investment in Hocus Pocus and Art Basel.

**WHEREFORE**, the CDD Parties respectfully requests that this Court:

(a)   Award the CDD Parties compensatory, special, and consequential damages; and

(b)   Award the CDD Parties such other and further relief as may be proper.

## COUNT VII
## QUANTUM MERUIT
### (Against Insomniac)

172.     The CDD Parties restate and reallege paragraphs 1–127 as if fully stated herein.

173.     This is an action for quantum meruit against Insomniac, and is brought in the alternative to Count I.

174.     The CDD Parties have already done significant work on Hocus Pocus and Art Basel.

175.     The CDD Parties conferred a benefit directly upon Insomniac by investing the CDD Parties' time, effort, expertise, and resources into Hocus Pocus and Art Basel.

176.     By not compensating the CDD Parties for the CDD Parties' investment of time,

effort, expense, and resources into Hocus Pocus and Art Basel, Insomniac has realized this benefit as the CDD Parties' expense.

177.    Insomniac is not justified in failing to pay the CDD Parties' for their investment of time, expertise, and resources into Hocus Pocus and Art Basel.

178.    Insomniac has knowingly and voluntarily accepted, retained, and enjoyed the benefits conferred upon it by the CDD Parties.  Insomniac has done so knowing that the CDD Parties expected to be paid for their investment in Hocus Pocus and Art Basel.

179.    The CDD Parties are entitled to payment for their investment of time, effort, expertise, and resources through Insomniac's acceptance of the CDD Parties' investment and/or through the parties' course of dealing.

180.    Insomniac's actions have resulted in a windfall for Insomniac, in that (1) Insomniac retained the benefit of the CDD Parties' investment of time, effort, expertise, and resources into Hocus Pocus and Art Basel, and (2) Insomniac has failed to pay the CDD Parties for their investment in these events.

181.    Under these circumstances, it would be inequitable for Insomniac to fail to compensate the CDD Parties for the CDD Parties' investment in Hocus Pocus and Art Basel.

182.    The CDD Parties have no remedy other than this lawsuit to recover for Insomniac's unjust enrichment.

183.    Insomniac is therefore liable in quantum meruit to the CDD Parties for failing to pay the CDD Parties for the CDD Parties' investment in Hocus Pocus and Art Basel.

**WHEREFORE**, the CDD Parties respectfully requests that this Court:

(a)    Award the CDD Parties compensatory, special, and consequential damages; and

(b)    Award the CDD Parties such other and further relief as may be proper.

## COUNT VIII
## FRAUDULENT INDUCEMENT
### (Against Rotella)

184.    The CDD Parties restate and reallege paragraphs 1–127 as if fully stated herein.

185.    This is a cause of action against Rotella for fraudulent inducement.

186.    Rotella fraudulently induced the CDD Parties to partner with Insomniac to produce Hocus Pocus and Art Basel and/or fraudulently induced the CDD Parties to invest substantial time, effort, expertise, and resources into Hocus Pocus and Art Basel.

187.    Rotella is not a party to the Settlement Agreement.

188.    Rotella, through his agents, made a false statements concerning a material fact that induced the CDD Parties to partner with Insomniac to produce Hocus Pocus and Art Basel and/or fraudulently induced the CDD Parties to invest substantial time, effort, expertise, and resources into Hocus Pocus and Art Basel; namely, through his agents, Rotella stated to the CDD Parties during the June 2, 2025 mediation before Judge Hanzman and during the parties' subsequent negotiations in finalizing the Settlement Agreement that Rotella and Insomniac would collaborate in good faith and treat the CDD Parties as partners in producing Hocus Pocus and Art Basel.

189.    Rotella knew the statements were false when he made them, or made the statements knowing he did not know whether they were true or false.  Rotella at all times intended to cause Insomniac to rip off and sabotage the CDD Parties by breaching the Settlement Agreement and/or not paying the CDD Parties for their investment of substantial time, effort, expertise, and resources into Hocus Pocus and Art Basel.

190.    Rotella intended that the CDD Parties would rely on the false statements by entering into the partnership to produce Hocus Pocus and Art Basel with Insomniac and fully performing their obligation by investing significant time, effort, expertise, and resources into the events.

191.     The CDD Parties justifiably relied on Rotella's false statements by entering into the partnership with Insomniac to produce Hocus Pocus and Art Basel and/or by investing significant time, effort, expertise, and resources into the events. The CDD Parties would not have partnered with Insomniac to produce these events and/or would not have invested their time, effort, expertise, and resources into these events if not for Rotella's statements.

192.     The CDD Parties have been damaged as a result of their reliance on Rotella's false statements because Insomniac has failed to pay the CDD Parties for their investment of time, effort, expertise, and resources in Hocus Pocus and Art Basel.

WHEREFORE, the CDD Parties respectfully request that this Court:

(a)   Award the CDD Parties compensatory, special, and consequential damages; and

(b)   Award the CDD Parties such other and further relief as may be proper

**COUNT IX**
**NEGLIGENT MISREPRESENTATION**
**(Against Rotella)**

193.     The CDD Parties restate and reallege paragraphs 1–127 as if fully stated herein.

194.     This is a cause of action Against Rotella for negligent misrepresentation, and is brought in the alternative to Count VIII.

195.     Rotella is not a party to the Settlement Agreement.

196.     Rotella, through his agents, made misrepresentations of material fact that induced the CDD Parties to partner with Insomniac to produce Hocus Pocus and Art Basel and/or induced the CDD Parties to invest substantial time, effort, expertise, and resources into Hocus Pocus and Art Basel; namely, through his agents, Rotella stated to the CDD Parties during the June 2, 2025 mediation before Judge Hanzman and during the parties' subsequent negotiations in finalizing the Settlement Agreement that Rotella and Insomniac would collaborate in good faith and treat the

CDD Parties as partners in producing Hocus Pocus and Art Basel.

197.     Rotella was negligent in making the statements because he should have known the statements were false.

198.     Rotella intended to induce the CDD Parties to rely on the misrepresentations by partnering with Insomniac to produce Hocus Pocus and Art Basel and by investing significant time, effort, expertise, and resources into the events.

199.     The CDD Parties justifiably relied on Rotella's misrepresentations by partnering with Insomniac to produce Hocus Pocus and Art Basel and/or by investing significant time, effort, expertise, and resources into the events.  The CDD Parties would not have partnered with Insomniac to produce these events and/or would not have invested their time, effort, expertise, and resources into these events if not for Rotella's misrepresentations.

200.     The CDD Parties have been damaged as a result of their reliance on Rotella's misrepresentations because Insomniac has failed to pay failed to pay the CDD Parties for their investment of time, effort, expertise, and resources in Hocus Pocus and Art Basel.

**WHEREFORE**, the CDD Parties respectfully requests that this Court:

(a)   Award the CDD Parties compensatory, special, and consequential damages; and

(b)   Award the CDD Parties such other and further relief as may be proper.

**COUNT X**
**BREACH OF FIDUCIARY DUTY**
**(Against Rotella)**

201.     The CDD Parties restate and reallege paragraphs 1–127 as if fully stated herein.

202.     Rotella owed the CDD Parties a fiduciary duty because the CDD Parties reposed great trust and confidence in Rotella and Insomniac to act in the CDD Parties' best interest and in good faith, as Rotella undertook, through his agents, to advise the CDD Parties, as the weaker

parties, regarding Rotella and Insomniac's intentions regarding the CDD Parties' efforts to produce Hocus Pocus and Art Basel and knowing that the CDD Parties were depending on such information to decide to partner with Insomniac in producing Hocus Pocus and Art Basel, which trust and confidence was accepted by Rotella.

203.    As a fiduciary, Rotella owed the CDD Parties a duty of loyalty, a duty of care, a duty of good faith, and to place the interests of the CDD Parties above his own, the duty to act with a superlative degree of frankness and fair dealing, the duty to disclose all material facts, the duty to refrain from self-dealing, the duty of honesty, and the overall duty not to take unfair advantage of and to act in the best interest of the CDD Parties.

204.    Rotella breached his fiduciary duties that he owed to the CDD Parties to disclose all material facts about Rotella and Insomniac's intentions with respect to the CDD Parties including their intention to rip off and sabotage the CDD Parties by breaching the Settlement Agreement and/or not paying the CDD Parties for their investment of substantial time, effort, expertise, and resources into Hocus Pocus and Art Basel.

205.    As a direct, proximate, and foreseeable result, the CDD Parties have been damaged.

**WHEREFORE**, the CDD Parties respectfully requests that this Court:

(a)   Award the CDD Parties compensatory, special, and consequential damages; and

(b)   Award the CDD Parties such other and further relief as may be proper.

## SUPPLEMENTAL PRAYER FOR RELIEF

**WHEREFORE**, the CDD Parties respectfully request that the Court enter judgment in its favor against Counterclaim Defendants, including the following relief:

a.    Equitable, injunctive, and declaratory relief as permitted by law or equity, including restitution and disgorgement of any ill-gotten gains Counterclaim Defendants

obtained through improper and unlawful conduct;

b.      Compensatory special and consequential damages;

c.      An award of pre-judgment and post-judgment interest to the maximum extent

permitted by law; and

d.      Such other and further relief as the Court deems just and proper.

## **JURY DEMAND**

The CDD Parties hereby demand a trial by Jury on all issues.

Dated: September 24, 2025.                          Respectfully submitted,

                                                 /s/ *Bruce A. Weil*
                                                 BRUCE ALAN WEIL
                                                 Fla. Bar No. 816469
                                                 bweil@bsfllp.com
     ROBERT G. KEEFE
     Fla. Bar No. 1010751
     rkeefe@bsfllp.com
     ALEXANDRA V. WILLIAMS
     Fla. Bar No. 1058369
     awilliams@bsfllp.com
     BOIES SCHILLER FLEXNER LLP
     100 S.E. 2nd Street, Suite 2800
     Miami, Florida 33131
     Telephone: (305) 539-8400
     Facsimile:  (305) 539-1307

*Counsel for Defendants/Counterclaim Plaintiffs SDC Holdings, LLC, David E. Sinopoli, HI-Note Production & Consulting, LLC, Davide L. Danese, Full Circle F&B LLC, Jose G. Coloma Cano, and The Happy Company, LLC*