# EXHIBIT B

# SETTLEMENT AGREEMENT AND RELEASE

This Confidential Settlement Agreement and Release (this "**Agreement**") is entered into by and between Insomniac Holdings, LLC ("**Insomniac**"), Live Nation Worldwide, Inc. ("**Live Nation**"), SDC Holdings, LLC ("**SDC**"), David Sinopoli ("**Sinopoli**"), HI-Note Production and Consulting, LLC ("**HI-Note**"), Full Circle F&B, LLC ("**Full Circle**"), The Happy Company, LLC ("**Happy Co**"), Jose Gabriel Coloma Cano ("**Cano**"), David Danese ("**Danese**") (SDC, Sinopoli, HI-Note, Full Circle, Happy Co, Cano, and Danese, collectively, "**CDD Parties**" each a "**CDD Party**"), FT Miami, LLC ("**FT Miami**"), FT INS, LLC ("**FTINS**"), and FT Intergalactic Gatherings, LLC ("**FTIG**") (collectively, the "**Parties**" and independently each a "**Party**"). This Settlement Agreement is effective as of the date of the last signature hereto (the "**Effective Date**").

## BACKGROUND

**WHEREAS**, Insomniac and certain CDD Parties are partners in Space Invaders, LLC ("**Space Invaders**"), which operates Club Space, a nightclub and dance/EDM music venue in Miami, Florida.

**WHEREAS**, Insomniac and certain CDD Parties are parties to that certain Amended and Restated Operating Agreement of Space Invaders, LLC dated July 24, 2019 ("**Space Invaders Operating Agreement**"), and those certain Management Agreements dated July 24, 2019, between Space Invaders and certain CDD Parties ("**Space Invaders Management Agreements**").

**WHEREAS**, the Space Invaders Operating Agreement and Space Invaders Management Agreements remain in full force and effect as modified or contradicted herein.

**WHEREAS**, Insomniac and certain CDD Parties sought to establish a music venue at a 4800 NW 37th Ave, Miami, FL 33142, which is known as "Factory Town." The Parties' collaboration and co-promotion of events at Factory Town shall be hereinafter referred to as the "**Factory Town Venture**."

**WHEREAS**, the certain Parties had a dispute over the structure of certain payment obligations, ownership, and structure of the Factory Town Venture (the "**Dispute**").

**WHEREAS**, on June 2, 2025, the Parties entered into a Confidential Binding Term Sheet, which has 19 points of agreement and was executed by the Parties at a mediation before Judge Michael Hanzman ("**Term Sheet**"), and the Parties wish to more specifically memorialize the Term Sheet and its points herein. The Term Sheet is incorporated herein by reference.

**NOW, THEREFORE**, for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, and intending to be legally bound hereby, the Parties hereby agree as follows:

## AGREED TERMS

1. Payment by Insomniac.

    (a)   In consideration for the promises and covenants herein, Insomniac will pay SDC the total sum of two million nine hundred thousand dollars ($2,900,000.00) (the "**Settlement Payment**") as provided herein. The Settlement Payment shall be paid from the funds currently held in 1306 Lounge, LLC, by or before June 20, 2025.

(b) On June 20, 2025, SDC shall cause or direct 1306 Lounge, LLC, to remit the Settlement Payment to SDC, with the balance of funds currently held by 1306 Lounge, LLC for the benefit of Insomniac, to be remitted to Insomniac immediately after SDC's receipt of the Settlement Payment.

(c) The Parties acknowledge and agree that they are solely responsible for paying any attorneys' fees and costs they incurred and that no Party nor its attorney(s) will seek any award of attorneys' fees or costs from the other Parties, except as provided herein. The Settlement Payment is in consideration and satisfaction of all sums that are owed, allegedly, owed, or which could, in the future be owed, by Insomniac, Live Nation, FTIG, FTINS, or FT Miami, to SDC, except any other monies that may be due to SDC under this Agreement, such as the Hocus Pocus and Art Basel events.

2. Taxes. SDC shall be solely responsible for, and is legally bound to make payment of, any taxes determined to be due and owing (including penalties and interest related thereto) by it to any federal, state, local, or regional taxing authority as a result of the Settlement Payment. SDC understands that neither Insomniac nor Live Nation has made, nor does SDC rely upon, any representations regarding the tax treatment of the sums paid pursuant to this Agreement. Moreover, SDC agrees to indemnify and hold Insomniac and Live Nation harmless in the event that any governmental taxing authority asserts any claim for unpaid taxes, failure to withhold taxes, penalties, or interest based upon the payment of the Settlement Payment.

3. 2024 Agreements Void. The Parties agree and acknowledge that the 2024 Agreements are hereby considered null and void *ab initio*. The CDD Parties, jointly and severally, agree and acknowledge that they never had, do not currently have, and in the future have no right to obtain, any interest whatsoever in Factory Town, the Factory Town Venture, FT Miami, or FTIG (collectively, the "**FT Parties**"), including, without limitation, (i) the tangible, intangible, or personal property of the FT Parties, whether upon dissolution or otherwise, (ii) the intellectual property of the FT Parties, whether or not registered, (iii) any profits, losses, distributions, dividends, allocations, or other rights to any payments of any kind or nature, (iv) membership interests, units, or other equity interests of any kind or nature whatsoever (including but not limited to instruments convertible into equity interests of the FT Parties or which purport to confer the option or other ability to purchase equity interests in the FT Parties) and any rights to vote, manage, control, or otherwise direct the affairs of the FT Parties, whether or not related to or arising from any of the foregoing interests or instruments, (v) rights to advancement, or other reimbursement, (vi) information rights concerning the FT Parties, and (vii) any right or interest in or to (including rights as a third party beneficiary) any contract to which the FT Parties are bound. "**2024 Agreements**" means, collectively: (a) Management Agreement between FT Miami, LLC and Insomniac Holdings, LLC, dated January 17, 2024; (b) Management Agreement between FT Miami, LLC and SDC Holdings, LLC, dated January 17, 2024; (c) Operating Agreement of FT Miami, LLC, dated January 17, 2024, (d) Operating Agreement of FT INS, LLC, dated January 17, 2024, and the Operating Agreement of FT Intergalactic Gatherings, LLC, dated January 17, 2024. Nothing in this section shall be construed as voiding or otherwise eliminating the Parties obligations in this Agreement.

(a) Separation; No Future Obligation. The Parties further acknowledge and agree that other than those deriving from Fab 5, LLC's ownership of Factory Town

[2775775/1]

Holdings, LLC, or specifically set forth herein agreements of the parties, the CDD Parties have no interest, entitlement, ownership, or equity in any of the profits, proceeds, payments, property, improvements, lease (including the August 1, 2023, Lease between Factory Town Holdings, LLC and Insomniac), land, use, or other rights, in Factory Town, the Factory Town Venture, FT Miami, FTIG, or events, festivals, concerts, or otherwise held at Factory Town, whether promoted, organized, or operated by Insomniac or others, and that Insomniac may, at its discretion, operate Factory Town in its sole discretion, without limitation, obligation, restrictions, or remuneration to or by CDD Parties. For avoidance of doubt, notwithstanding anything to the contrary herein, or in the Space Invaders Operating Agreement or Space Invaders Management Agreements, other than those obligations set forth in section 6 hereof, Insomniac shall have no obligation to partner with, pay, or otherwise collaborate with any other party on any past or future event, concert, festival, or otherwise, whether at or through Factory Town or otherwise.

(b) The foregoing shall not affect Space Invaders, LLC's or 3P Festival, LLC's obligations to pay certain CDD Parties for their respective membership interests or services rendered.

(c) To the extent the parties produce events, collaborations, or partnerships, other than through Space Invaders, LLC (Club Space) or 3P Festival, LLC (III Points) ("Future Collaborations"), neither the parties' future or prior course of dealing nor the Space Invaders Operating Agreement or Space Invaders Management Agreements shall govern. The structure and payment of and for any Future Collaboration must be negotiated at arms' length.

4. Work for Hire. The Parties agree as follows:

(a) All results and proceeds of any kind or nature from any services rendered by SDC ("**SDC Services**"), jointly or severally, for, on behalf of, or in connection with, the FT Parties, including without limitation all forms of all documents, designs, inventions, and other patentable, trademarkable, copyrightable, or otherwise protectable material conceived, created, delivered or reduced to practice, in whole or in part, by SDC or rejected or exploratory materials in any stage of development, created by SDC for Factory Town or the Factory Town Venture ("**Deliverables**") was, shall become, and/or shall remain, as applicable, the exclusive property of Insomniac.

(b) To the extent possible, any Intellectual Property Rights in any Services rendered by SDC, Deliverables, and any other materials generated by SDC for Factory Town which are copyrightable will be deemed "works made for hire" for the FT Parties under the U.S. Copyright Act and other similar laws of the applicable international jurisdiction(s) of the world. To the extent that they are not "works made for hire," SDC hereby irrevocably assign all Intellectual Property Rights in any such Services, Deliverables and any other materials generated by SDC in perpetuity and agree to waive or refrain from exercising any residual moral or equitable remuneration rights. SDC hereby assigns all other Intellectual Property Rights in the Services, Deliverables and any other materials generated by SDC for Factory Town or the Factory Town Venture in connection with, the FT Parties, Factory Town, the Factory Town Venture, or any event held at Factory Town. To the extent any Intellectual Property Rights in Services, Deliverables and any other materials generated SDC on behalf of, or in connection

[2775775/1]

with, the FT Parties, Factory Town, the Factory Town Venture, or any event held at Factory Town, are not assignable or waivable, SDC jointly and severally, hereby grant Insomniac an exclusive, worldwide, irrevocable, perpetual, royalty-free, freely transferable license to reproduce, distribute, create derivative works of, publicly perform, publicly display and transmit by any means or format, whether now known or hereafter devised, such Intellectual Property Rights in Services, Deliverables and any other materials generated SDC for, on behalf of, or in connection with, the FT Parties, Factory Town, the Factory Town Venture, or any event held at Factory Town.

(c) "**Intellectual Property Rights**" means, collectively, all copyrights, trademark rights, inventions, moral rights, neighboring rights, patent and design rights, proceed rights, proprietary rights, re-use rights, rental and lending rights, equitable remuneration rights, and related rights, now and hereafter recognized, throughout the universe, in perpetuity without any restrictions of any type, including, without limitation, so-called "creative right" restrictions, permissions, and/or re-use fees or other payments, together with any goodwill attaching thereto. Without limiting the generality of the foregoing, ownership of all right, title and interest in the Services, Deliverables and any other materials generated by SDC for Factory Town or the Factory Town Venture for, on behalf of, or otherwise in connection with the FT Parties, Factory Town, the Factory Town Venture, or any event held at Factory Town and any part thereof, including, without limitation, all Intellectual Property Rights therein or related thereto, will automatically and immediately fully vest in Insomniac (even if not completed) upon the moment of creation without the necessity of any further action or consideration by any Party.

(d) Other than SDC, the remaining CDD Parties represent and warrant that they did not provide any proceeds, services, deliverables, or products of any kind, including without limitation documents, designs, inventions, and other patentable, trademarkable, copyrightable, or otherwise protectable material conceived, created, delivered or reduced to practice, to or for Factory Town or the Factory Town Venture. Put differently, the remaining CDD Parties have no information or rights to transfer or relinquish pursuant to sections 4(a)-(c), or section 5 below.

5. Assignment and Assumption of Assets.

(a) SDC hereby assigns, and Insomniac hereby agrees to assume, all assets or other property used or developed in connection with, arising from, or otherwise related to Factory Town or the Factory Town Venture that SDC had, have, or may in the future obtain, including, but not limited to, (i) all website, application, social media, or other digital accounts, logins, passwords, or other access rights to any online website, platform, or similar asset, (ii) tangible, intangible, or personal property, (iii) intellectual property, (iv) data, (v) website or email domains, (vi) internal or external databases, and (vii) artwork, marketing materials, or other digital or physical assets such as footage, photographs, logos, or similar materials. SDC hereby agrees that, from and after the Effective Date, SDC shall at the reasonable request of Insomniac, Live Nation, or the FT Parties, execute, acknowledge, and deliver such additional documents, instruments, or conveyances, and take such further actions, as may be reasonably necessary or desirable to effectuate, perfect, confirm, or evidence the complete transfer, assignment, and relinquishment of all right, title, and interest in and to the foregoing assets or property,

whether real, personal, tangible, or intangible, including but not limited to executing deeds, assignments, releases, or other instruments of transfer. SDC further agrees to reasonably cooperate fully in providing any information, records, or consents required to facilitate the assignment or transfer of such assets or property interests the designated assignee(s), and to perform all acts reasonably required to ensure that Live Nation, Insomniac, or the FT Parties, as the case may be, obtain the full benefit of any such assignment, and shall comply with a request to do so within seven (7) days of a request by Insomniac or the FT Parties.

(b) Limited Indemnification for Intellectual Property Claims. Insomniac hereby agrees to indemnify, defend (including payment of reasonable attorney fees and costs) and hold the CDD Parties harmless from and against all claims, causes of action, lawsuits, and demands, which are asserted and/or arise after the Effective Date, and that allege that Insomniac's use of the intellectual property described in sections 4 (including all subparts) and/or 5 of this Agreement infringe upon another's rights, ownership and/or intellectual property rights. The duty to defend shall be independent of the duty to indemnify, and the CDD Parties shall have the right to select counsel for a reasonable rate in light of the circumstances at the expense of Insomniac.

6. Factory Town Wind-Up Events. The Insomniac Parties and the CDD Parties shall collaborate on the following two events, which shall be held at Factory Town pursuant to the following terms:

(a) **Hocus Pocus 2025**

   i. Insomniac shall sublease Factory Town to Space Invaders, LLC on October 31, November 1, and November 2 of 2025, from 7:00 p.m. to 7:00 a.m. each day, for the purpose of hosting a three-day Halloween event known as "Hocus Pocus."

   ii. Space Invaders shall pay Insomniac the sum of $300,000 for the sublease, which shall include the use of the entire property and all stages, as well as all permanent venue staff and existing permanent infrastructure (including staging) at no extra cost.

   iii. Insomniac shall also provide Space Invaders, LLC with five load-in and three load-out days, to allow for equipment to be loaded into the event prior to its start, and out of the event after its completion.

   i. Hocus Pocus shall be co-promoted by Insomniac and Club Space/Space Invaders, LLC. SDC shall ensure that Insomniac approves all budgets, ticket pricing, etc. prior to announcing the event or details thereof. SDC shall also provide a clear list of all talent offers it has sent out and a clear list of any offers that have been accepted and/or confirmed. SDC shall select artist hospitality staff and operate artist hospitality for Hocus Pocus. Except to the extent contracts with talent/artist are already fully executed, SDC shall initially

[2775775/1]

propose all talent/artists and submit proposed offers/contracts/agreements at market rates to Insomniac prior to execution for their review and approval, such approval not to be unreasonably withheld. In the event of any dispute regarding contracting for talent, the dispute shall be submitted on an expedited basis to Judge Michael Hanzman for his determination.

iv. Insomniac shall operate the bars at Factory Town and shall be responsible for the cost of bar staff. Insomniac shall retain all revenues from the bars and tables, except that Insomniac shall pay 20% of net revenue from all bars and tables (gross revenue less taxes, tips, credit card fees, comps) to Space Invaders, LLC. Space Invaders, LLC shall retain all other event related revenue.

v. Insomniac shall provide permanent venue staff, and as such there shall be no staffing allocation for Space Invaders, LLC.

(b) **Art Basel 2025**

ii. Insomniac shall sublease Factory Town to Space Invaders, LLC from December 3 through December 7, 2025, from 7:00 p.m. to 7:00 a.m. each day, for the purpose of hosting a five-day event during Miami's "Art Basel."

iii. Space Invaders, LLC shall pay Insomniac the sum of $550,000 for the sublease, which shall include the use of the entire property and all stages, as well as all permanent venue staff and existing permanent infrastructure (including staging) at no extra cost.

iv. Insomniac shall also provide Space Invaders with five load-in and three load-out days, to allow for equipment to be loaded into the event prior to its start, and out of the event after its completion.

v. Art Basel shall be co-promoted by Insomniac and Club Space/Space Invaders, LLC with Insomniac taking the lead on operations. SDC shall ensure that Insomniac approves all budgets, ticket pricing, etc. prior to announcing the event or details thereof. SDC shall also provide a clear list of all talent offers it has sent out and a clear list of any offers that have been accepted and/or confirmed. SDC shall select and book artist hospitality staff and operate artist hospitality for Art Basel. Except to the extent contracts with talent/artist are already fully executed, SDC shall initially propose all talent/artists and submit proposed offers/contracts/agreements at market rates to Insomniac prior to execution for their review and approval, such approval not to be unreasonably withheld. In the event of any dispute regarding contracting for talent, the dispute shall be submitted on an expedited basis to Judge Michael Hanzman for his determination.

[2775775/1]

    vi.    Insomniac shall operate the bars at Factory Town and shall be responsible for the cost of bar staff. Insomniac shall retain all revenues from the bars and tables, except that Insomniac shall pay 20% of net revenue from all bars and tables (gross revenue less taxes, tips, credit card fees, comps) to Space Invaders, LLC. Space Invaders, LLC shall retain all other event related revenue.

    vii.    Insomniac shall provide permanent venue staff, and as such there shall be no staffing allocation for Space Invaders, LLC.

(c) **Fees for Hocus Pocus and Art Basel**

    i.    The amounts paid to the CDD Parties by Space Invaders, LLC for Art Basel and Hocus Pocus shall be those fees payable under the Space Invaders Operating Agreement and Management Agreements except that under no circumstances shall the amounts paid to the Non-Insomniac members exceed 49% of the net profit from those events.

    ii.    Subject to the limitation above, the CDD Parties to receive a 6% management fee of the gross revenue actually received for the entire Factory Town event (not including rent) ("Management Fee") unless the events do not generate a net profit. The Management Fee shall be made payable to SDC. Those amounts payable to Insomniac under the Space Invaders Operating Agreement, shall be paid to Insomniac.

    iii.    The Parties are currently have a disagreement over responsibility for and/or allocation of certain budget items. The Parties will cooperate in good faith to prepare an agreed upon line-item budget of estimated event revenue and expenses to be utilized for the purposes of forecasting and ultimately determining final figures to allocate payments for Hocus Pocus and Art Basel ("Line-Item Estimate"). The Parties acknowledge that the Line-Item Estimate shall not be exclusive, but is an estimate of the items to be utilized in determining profits for purposes of paying the CDD Parties and Space Invaders pursuant to this Agreement To the extent the Parties are unable to agree to a line-item Estimate by or before July 25, 2025 in order to determine profits, the Parties shall set a hearing before Judge Michael Hanzman, who shall evaluate the respective positions of the Parties and make a determination. The determination of Judge Hanzman shall be binding and non-appealable. To the extent there is a dispute over a line item added to the Line-Item Estimate following Art Basel or Hocus Pocus, the Parties shall set a hearing before Judge Michael Hanzman, who shall evaluate the respective positions of the Parties and make a determination. The determination of Judge Hanzman shall be binding and non-appealable. The payment of the fees by Space Invaders, LLC, for Art

Basel and Hocus Pocus does not create any obligation for Insomniac to pay fees for any future event, whether at Factory Town or otherwise with any future payment obligations by Insomniac to any other party being expressly disclaimed hereby. For all such evaluations and determinations under this section, Judge Hanzman shall also consider the terms of the Term Sheet.

7. Clarification and Exception to Exclusivity and Non-competition Agreements.

(a) The Parties recognize and agree that section 3.8 of the Space Invaders Operating Agreement places competition restrictions and exclusivity obligations on the CDD Parties. The Parties further agree that other than those exceptions in section 3.8.2, the exclusivity obligations and competition restrictions in the Space Invaders Operating Agreement under certain circumstances prevent the CDD Parties from opening, operating, owning, promoting, or profiting from nightclubs, bars, event venues, music festivals, concerts, and other live music events.

(b) Notwithstanding anything to the contrary, SDC may own, open and/or operate a venue with a total maximum legal capacity of 350 people or less (the "**Permitted Venue**"). The Permitted Venue must, at all times, adhere to that total maximum legal capacity. No Restricted Genre (as defined in the following sentence) can be played by any musical artists or DJs that perform at the Permitted Venue. The Permitted Venue may play music, however, neither the DJ, nor any artist, performer, or other method or medium of playing music may, at any time, play the following genres of music, each of which shall be considered a "**Restricted Genre**": Electronic Dance Music commonly referred to as "**EDM**," and such genre the CDD Parties agree, would be competitive to Space Invaders, LLC and Club Space and thus impermissible. The Permitted Venue may employ a disc jockey ("**DJ**"), however, such DJ shall not be an advertised or headlining act and may not play for longer than 75 minutes in duration. The DJ shall not be the focus of the act, nor shall he or she play any Restricted Genre. Moreover, no artist, act, or performer who has played or may be reasonably expected to play at Club Space may play at the Permitted Venue, irrespective of genre. Nothing in this section shall be construed as allowing SDC or the CDD Parties to own or operate multiple Permitted Venues or non-permitted venues. However, the Permitted Venue may be owned through and/or by a special purpose entity and/or other entity and/or investment vehicle of any of the CDD Parties.

(c) For purposes of Section 7(b) EDM shall mean the type of music played at or which may be reasonably expected to be played at Club Space.

(d) Nothing in this Agreement alters, or amends, the Insomniac Parties' Activities and Services outlined in section 3.7 of the Space Invaders Operating Agreement.

8. Limited Mutual Release.

(a) The Parties, on behalf of themselves, their predecessors, successors, direct and indirect parent companies, direct and indirect subsidiary companies, companies under common control with any of the foregoing, affiliates, and assigns, and its and their past, present, and future officers, directors, shareholders, interest holders, members, partners, attorneys, agents, employees, managers, representatives, assigns, and successors in interest, and all persons acting by, though, under, or in concert with them, and each of them, hereby release and discharge the other Parties, together with their

[2775775/1]

predecessors, successors, direct and indirect parent companies, direct and indirect subsidiary companies, companies under common control with any of the foregoing, affiliates and assigns and its and their past, present, and future officers, directors, shareholders, interest holders, members, partners, attorneys, agents, employees, managers, representatives, assigns, and successors in interest, and all persons acting by, through, under, or in concert with them, and each of them, from all known and unknown charges, complaints, claims, grievances, liabilities, obligations, promises, agreements, controversies, damages, actions, causes of action, suits, rights, demands, costs, losses, debts, penalties, fees, wages, medical costs, pain and suffering, mental anguish, emotional distress, expenses (including attorneys' fees and costs actually incurred), and punitive damages, of any nature whatsoever, known or unknown, which any Party has, or may have had, against the other Parties, whether or not apparent or yet to be discovered, related to and/or arising from the Factory Town Venture, Factory Town, FTIG, FT Miami, FTINS, the FT Parties, the CDD Services, the Dispute, and/or the January 2024 Agreements ("Released Claims"). Nothing herein shall be construed as a release of claims that accrued after the Effective Date or the Parties obligations under this Agreement or the Term Sheet. Nothing here in shall be construed as a release of claims by Factory Town Holdings, LLC.

(b) <u>Limited Release of Coloma Sr.</u> Insomniac hereby releases and discharges, Jose Coloma Sr. ("Coloma Sr.") of any claims related to Coloma Sr.'s provision of products or services to Space Invaders from the beginning of time through the Effective Date.

9. <u>Acknowledgment of Settlement</u>. The Parties acknowledge that the consideration set forth in this Agreement, which includes, but is not limited to, the Settlement Payment, resolves any claim for relief that is, or could have been alleged, no matter how characterized, including, without limitation, compensatory damages, damages for breach of contract, bad faith damages, reliance damages, liquidated damages, damages for humiliation and embarrassment, punitive damages, costs, and attorneys' fees related to or arising from any action, agreement, matter, or claims related to the Released Claims.

10. <u>Covenant Not to Sue.</u> The CDD Parties, in their derivative capacity as owners of Space Invaders, LLC and related entities (derivative capacity) expressly covenant and agree not to file or encourage any lawsuit, claim, action, or other legal charge against Space Invaders, LLC, Space IP Licensing, LLC, Space Holdings, LLC, Club Space Management, LLC, Insomniac, or the Insomniac Parties as defined in the Space Invaders Operating Agreement or their respective officers, directors, employees, owners, parents, subsidiaries, or affiliates arising out of or relating to Insomniac's purchase of the Intellectual Property used in the operation of the Venue as such terms are defined in the Space Invaders Operating Agreement.

11. <u>No Admission of Liability</u>. The Parties acknowledge that the Settlement Payment was agreed upon as a compromise and final settlement of disputed claims and that payment of the Settlement Payment is not, and may not be construed as, an admission of liability by any of the Parties hereto.

12. <u>Covenants Independent.</u> The restrictive covenants in sections 8, 15, and 16 hereof and any such restrictive covenants (confidentiality, non-competition, non-solicitation, non-disparagement) applicable to Space Invaders, LLC are and shall forever be independent covenants such that the breach, by any party, of any provision of this Agreement, or any other agreement by, among, or between the Parties or any combination of the Parties, shall not

[2775775/1]

constitute a defense to, elimination of, or otherwise have an effect on the validity or enforceability of those covenants.

13. <u>Remedies</u>. Without limiting the remedies available to the Parties, each Party acknowledges that a breach of any of the covenants contained in Sections 8, 15, and 16 may result in material irreparable injury to the non-breaching Party, for which there is no adequate remedy at law, and for which will be difficult if not impossible to measure damages for such injuries. Therefore, the Parties agree that, in the event of such a breach or threat thereof, the non-breaching Party or Parties shall be entitled, without the requirement to post bond or other security, to seek a temporary restraining order and/or injunction restraining the breaching Party or Parties from engaging in activities prohibited by this Agreement or such other relief as may be required.

14. <u>Confidentiality of Agreement</u>. The Parties expressly understand and agree that the existence of this Agreement and its contents (including, but not limited to, the fact of payment and the amounts to be paid hereunder) shall remain CONFIDENTIAL and shall not be disclosed to any third party whatsoever, except the Parties' counsel, accountants, financial advisors, tax professionals retained by them, any federal, state, or local governmental taxing or regulatory authority, and the Parties' management, officers, and Board of Directors and except as required by law or order of court. Any person identified in the preceding sentence to whom information concerning this Agreement is disclosed is bound by this confidentiality provision and therefor liable for damages resulting from its breach. Nothing contained in this paragraph shall prevent any Party from stating that the Parties have "amicably resolved all differences," provided, however, that in so doing, the Parties shall not disclose the fact or amount of any payments made or to be made hereunder and shall not disclose any other terms of this Agreement or the settlement described herein. If any subpoena, order, or discovery request (the "**Document Request**") is received by any of the Parties hereto calling for the production of the Agreement, such Party shall promptly notify the other Party hereto prior to any disclosure of same. In such case, the subpoenaed Party shall: (a) make available as soon as practicable (and in any event prior to disclosure), for inspection and copying, a copy of the Agreement it intends to produce pursuant to the Document Request unless such disclosure is otherwise prohibited by law; and (b) to the extent possible, not produce anything in response to the Document Request for at least ten (10) business days following such notice. If necessary, the subpoenaed Party shall take appropriate actions to resist production, as permitted by law, so as to allow the Parties to try to reach agreement on what shall be produced. This paragraph is a material part of this Agreement. In the event litigation is required to enforce this Agreement, this Agreement may be attached and filed with a court of competent jurisdiction, provided that the filing party shall take all necessary steps to keep the filing under seal to the extent permitted by a court.

15. <u>Non-Disparagement & Joint Statements</u>.

(a)     The Parties agree that, they, individually or through their respective officers, directors, agents, or employees, will not make any disparaging statements or representations, either directly or indirectly, whether orally or in writing, by word or gesture, to any person whatsoever, about the other Party or the other Party's affiliates, directors, officers, employees, attorneys, agents, owners, parent companies, or representatives. For purposes of this paragraph, a disparaging statement or representation is any communication which, if publicized to another, would cause or tend to cast the other party in a

[2775775/1]

negative light, or cause the recipient of the communication to question the business condition, integrity, competence, good character, or product quality of the person or entity to whom the communication relates.

(b) The Parties agree to abide by the following talking points when communicating with others in the music industry: (i) except as provided herein, Insomniac is assuming full responsibility for Factory Town management and operations, (ii) the parties are on good terms and will maintain their successful partnership while continuing to produce events together, and (iii) Club Space will continue to curate events at Factory Town.

(c) Neither the statements issued in section 16(b) nor any other provision of this Agreement or any prior agreements between the Parties, obligates the Parties to collaborate on any future events, ventures, festivals, concerts or otherwise, outside of Space Invaders, LLC and Club Space and those mentioned in section 6, nor does this Agreement or any prior agreement between the Parties obligate Insomniac to pay the CDD Parties for any events, ventures, festivals, concerts or otherwise, other than the payments expressly required herein or to the extent Space Invaders, LLC must pay the CDD Parties for their services and equity interest.

16. <u>Agreement is Legally Binding</u>. The Parties intend this Agreement to be legally binding upon and shall inure to the benefit of each of them and their respective successors, assigns, executors, administrators, heirs, and estates. Moreover, the persons and entities referred to in paragraph 3 above, but not a Party, are third-party beneficiaries of this Agreement.

17. <u>Entire Agreement; Conflicts</u>. The recitals set forth at the beginning of this Agreement are incorporated by reference and made a part of this Agreement. This Agreement constitutes the entire agreement and understanding of the Parties and supersedes all prior negotiations and/or agreements, proposed or otherwise, written or oral, concerning the subject matter hereof, except for the Term Sheet, which is incorporated herein. Furthermore, no modification of this Agreement shall be binding unless in writing and signed by each of the parties hereto. In the event of any conflict between this Agreement and any prior agreement by, among, or between the parties or any combination of the parties (including the Space Invaders, LLC Operating Agreement and Space Invaders Management Agreements), this Agreement shall control.

18. <u>New or Different Facts; No Effect</u>. Except as provided herein, this Agreement shall be, and remain, in effect despite any alleged breach of this Agreement or the discovery or existence of any new or additional fact, or any fact different from that which either Party now knows or believes to be true. Notwithstanding the foregoing, nothing in this Agreement shall be construed as, or constitute, a release of any Party's rights to enforce the terms of this Agreement.

19. <u>Interpretation</u>. Should any provision of this Agreement be declared or be determined by any court to be illegal or invalid, the validity of the remaining parts, terms, or provisions shall not be affected thereby and said illegal or invalid part, term, or provision shall be deemed not to be a part of this Agreement. The headings within this Agreement are purely for convenience and are not to be used as an aid in interpretation. Moreover, this Agreement shall not be construed against either Party as the author or drafter of the Agreement.

20.     <u>Choice of Law.</u> This Agreement and all matters arising out of or relating to this Agreement, whether sounding in contract, tort, or statute are governed by, and construed in accordance with, the laws of the State of Florida, United States of America, without giving effect to the conflict of laws provisions thereof to the extent such principles or rules would require or permit the application of the laws of any jurisdiction other than those of the State of Florida.

21.     <u>Choice of Venue.</u> The state or federal courts of Florida located in Miami Dade County shall be the exclusive forums for litigation concerning this Agreement. All parties to this Agreement consent to personal jurisdiction in such courts.

22.     <u>Legal Fees.</u> The parties shall bear their own fees and costs in the negotiating and drafting this Agreement. In the event of any litigation arising out of and relating to this Agreement, the prevailing party will be entitled to recover its reasonable attorneys' fees for pre-trial, trial, and appeals, including cost of experts, consultants, and all other permissible fees and costs of litigation and collection.

23.     <u>Reliance on Own Counsel.</u> In entering into this Agreement, the Parties acknowledge that they have relied upon the legal advice of their respective attorneys, who are the attorneys of their own choosing, that such terms are fully understood and voluntarily accepted by them, and that, other than the consideration set forth herein, no promises or representations of any kind have been made to them by the other Party. The Parties represent and acknowledge that in executing this Agreement they did not rely, and have not relied, upon any representation or statement, whether oral or written, made by the other Party or by that other Party's agents, representatives, or attorneys with regard to the subject matter, basis, or effect of this Agreement or otherwise.

24.     <u>Counterparts.</u> This Agreement may be executed by the Parties in counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.

25.     <u>Authority to Execute Agreement.</u> By signing below, each Party warrants and represents that the person signing this Agreement on its behalf has authority to bind that Party and that the Party's execution of this Agreement is not in violation of any by-law, covenants, and/or other restrictions placed upon them by their respective entities.

**READ THE FOREGOING DOCUMENT CAREFULLY. IT INCLUDES A RELEASE OF KNOWN AND UNKNOWN CLAIMS.**

[SIGNATURE PAGE FOLLOWS]

**IN WITNESS WHEREOF,** and intending to be legally bound, each of the Parties hereto has caused this Agreement to be executed as of the date(s) set forth below.

*Ian Humphrey*
Insomniac Holdings, LLC

Dated: _____

*[signature]*
Live Nation Worldwide, Inc.

Dated: 7/2/25

FT INS, LLC

*Ian Humphrey*
FT INS, LLC

Dated: 7/2/25

FT Intergalactic Gatherings, LLC

*Ian Humphrey*
FT Intergalactic Gatherings, LLC

Dated: 7/2/25

FT Miami, LLC

*Ian Humphrey*
FT Miami, LLC

Dated: 7/2/25

Jose Gabriel Coloma Cano

Dated: _____

David Danese

Dated: _____

David Sinopoli

Dated: _____

Full Circle F&B, LLC

Dated: _____

The Happy Company, LLC

Dated: _____

HI-Note Production and Consulting, LLC

Dated: _____

SDC Holdings, LLC

Dated: _____

[2775775/1]

**IN WITNESS WHEREOF,** and intending to be legally bound, each of the Parties hereto has caused this Agreement to be executed as of the date(s) set forth below.

_____
Insomniac Holdings, LLC

Dated: _____

_____
Live Nation Worldwide, Inc.

Dated: _____

_____
FT INS, LLC

_____
FT Intergalactic Gatherings, LLC

_____
FT INS, LLC

Dated: _____

_____
FT Intergalactic Gatherings, LLC

Dated: _____

_____
FT Miami, LLC

/s/ Jose Coloma
_____
Jose Gabriel Coloma Cano

Dated: 07/02/2025

_____
FT Miami, LLC

Dated: _____

/s/ David Danese
_____
David Danese

Dated: 07/02/2025

/s/ David Sinopoli
_____
David Sinopoli

Dated: 7/2/25

/s/ David Danese
_____
Full Circle F&B, LLC

Dated: 07/02/2025

/s/ Jose Coloma
_____
The Happy Company, LLC

Dated: 07/02/2025

/s/ signature
_____
HI-Note Production and Consulting, LLC

Dated: 7/2/25

/s/ signature
_____
SDC Holdings, LLC

Dated: 7/2/25

[2775775/1]

**IN WITNESS WHEREOF,** and intending to be legally bound, each of the Parties hereto has caused this Agreement to be executed as of the date(s) set forth below.

| | |
|---|---|
| Insomniac Holdings, LLC | Live Nation Worldwide, Inc. |
| Dated: _____ | Dated: _____ |
| *[signature]* | *[signature]* |
| FT INS, LLC | FT Intergalactic Gatherings, LLC |
| | |
| FT INS, LLC | FT Intergalactic Gatherings, LLC |
| Dated: _____ | Dated: _____ |
| *[signature]* | *[signature]* |
| FT Miami, LLC | Jose Gabriel Coloma Cano |
| | Dated: 07/02/2025 |
| FT Miami, LLC | |
| Dated: _____ | |
| *[signature]* David Danese | David Sinopoli |
| Dated: 07/02/2025 | Dated: _____ |
| *[signature]* | *[signature]* |
| Full Circle F&B, LLC | The Happy Company, LLC |
| Dated: 07/02/2025 | Dated: 07/02/2025 |
| | |
| HI-Note Production and Consulting, LLC | SDC Holdings, LLC |
| Dated: _____ | Dated: _____ |

[2775775/1]