UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

INSOMNIAC HOLDINGS, LLC,

    Plaintiff,

vs.

SDC HOLDINGS, LLC, *et al.*,

    Defendants.

_____/

SDC HOLDINGS, LLC, *et al.*

    Counter-Plaintiffs,

v.

INSOMNIAC HOLDINGS, LLC, *et al.*,

    Counter-Defendants.

_____/

CASE NO.: 1:25cv23486-RKA

**PASQUALE ROTELLA'S MOTION TO STAY DISCOVERY PENDING COURT'S DETERMINATION OF HIS MOTION DISMISS OR STRIKE DEFENDANTS' COUNTERCLAIM AND TO STRIKE IMPERTINENT ALLEGATIONS**

    Counter-Defendant, Pasquale Rotella ("Mr. Rotella"), by and through the undersigned counsel of record, and, pursuant to this Court's inherent powers to control its own docket, hereby moves for an order staying discovery as to Mr. Rotella while the Court adjudicates Mr. Rotella's Motion to Dismiss (Dkt. 42). In support thereof, Mr. Rotella states the following.

**INTRODUCTION**

    Counter-Plaintiffs promised to sue and smear Insomniac Holdings, LLC's CEO, Pasquale Rotella ("Mr. Rotella"). They promised to sue him irrespective of any actual claims, liability, or causes of action. They promised to smear him by bringing up decades-old misdemeanor charges and social media posts. They did just that.

    They sued Mr. Rotella for fraudulent inducement and negligent misrepresentation. Both claims, however, require reliance—reliance that was expressly disclaimed in the Settlement

1

Agreement. Moreover, Counter-Plaintiffs allege to have relied on statements of their adversary, in the face of Florida law that makes it clear a person has no right to rely on an adversary. What's worse, perhaps, is the negligent misrepresentation claim against Mr. Rotella was released by Counter-Plaintiffs through the Settlement Agreement itself.

Of course, Counter-Plaintiffs did this to harass Mr. Rotella, and to avoid the Apex Doctrine's limitations. By making Mr. Rotella a party individually, Counter-Plaintiffs are trying to skirt the prohibition or limitation against taking Mr. Rotella's (Insomniac's CEO) deposition. This should not be permitted and, as such, Counter-Defendant, Pasquale Rotella, hereby moves for an order from the Court staying discovery against Mr. Rotella in his individual capacity pending the resolution of the Mr. Rotella's Motion to Dismiss the Counterclaim, which was filed on October 14, 2025 (Dkt. 42).

District courts possess the discretion to stay discovery in certain circumstances when a potentially case-dispositive motion to dismiss is pending, because the legal sufficiency of a claim should "be resolved before discovery begins." *Isaiah v. JPMorgan Chase Bank, N.A.*, 960 F.3d 1296, 1308–09 (11th Cir. 2020). That is the case here. Both Insomniac and Mr. Rotella have filed a Motion to Dismiss citing the deficiencies mentioned above, and others. Mr. Rotella should not be forced to endure the time, cost, and, if the counterclaim is any indication, harassment that will accompany discovery where there is a strong likelihood the claims against him will be dismissed with prejudice. At this stage, discovery against Mr. Rotella should be paused. A stay of discovery pending the Court's adjudication of Mr. Rotella's Motion to Dismiss is both reasonable and appropriate.

**LEGAL STANDARD**

Federal Rule of Civil Procedure 26(b)(1) recognizes that trial courts have the authority to limit the scope of discovery. Indeed, district courts enjoy "broad discretion to stay proceedings as an incident to its power to control its own docket." *SandP Sols., Inc. v. The Silver Logic, LLC*, No. 21-80949-CIV, 2021 WL 9347080, at *1 (S.D. Fla. Nov. 1, 2021) (citing *Clinton v. Jones*, 520 U.S. 681, 706 (1997)). "Trial courts have the responsibility to manage pretrial discovery properly in order to avoid a massive waste of judicial and private resources." *SandP Sols., Inc.*, 2021 WL 9347080, at *1 (quoting *Rivas v. Bank of N.Y. Mellon*, 676 F. App'x 926, 932 (11th Cir. 2017)) (internal quotation marks omitted). The Eleventh Circuit has emphasized this responsibility. *See Perez v. Miami–Dade Cty.*, 297 F.3d 1255, 1263 (11th Cir. 2002) ("[W]e have repeatedly

emphasized the responsibility of trial courts to manage pretrial discovery properly in order to avoid a massive waste of judicial and private resources and a loss of society's confidence in the courts' ability to administer justice.")

Before the court rules on a motion to dismiss, "[n]either the parties nor the court have any need for discovery." *Moore v. Potter*, 141 F. App'x 803, 807 (11th Cir. 2005) (quoting *Chudasama v. Mazda Motor Corp.,* 123 F.3d 1353, 1367 (11th Cir. 1997)). Thus, "[g]ranting a discovery stay until an impending motion to dismiss is resolved is a proper exercise" of the Court's responsibility to manage discovery fairly and efficiently. *Rivas*, 676 F. App'x at 932; *see also Chudasama*, 123 F.3d at 1368 ("[A]ny legally unsupported claim that would unduly enlarge the scope of discovery should be eliminated before the discovery stage, if possible."). While Mr. Rotella recognizes that stays of discovery in this District are the exception rather than the rule,[1] this one such case, as the claims against Mr. Rotella are entirely devoid of any factual or legal predicate.

"For a stay to be warranted, the moving party must show that (1) they will be prejudiced, (2) the pending motion is clearly meritorious and case dispositive, and (3) any prejudice to the non-moving party is outweighed by the possibility the motion will be dispositive." *Turner v. Costa Crociere S.P.A.*, No. 1:20-cv-21481, 2020 WL 9071486, at *4 (S.D. Fla. Aug. 23, 2020) (citations omitted). "In evaluating whether the moving party has met its burden, a court 'must balance the harm produced by a delay in discovery against the possibility that the [dispositive] motion will be granted and entirely eliminate the need for such discovery.'" *Bocciolone v. Solowsky*, 2008 WL 2906719, at *2 (S.D. Fla. July 24, 2008) (quoting *McCabe*, 233 F.R.D. at 685).

To determine whether a stay of discovery pending the disposition of a motion to dismiss is appropriate, the Court should take a "preliminary peek" at the motion to dismiss to determine whether it appears to be "meritorious and dispositive of the entire case." *SandP Sols., Inc.*, WL 9347080, at *1.

## ARGUMENT

The Court should stay discovery pending resolution of Mr. Rotella's Motion because Mr. Rotella's Motion to Dismiss is meritorious and will dispose of the entire case against Mr. Rotella, and because a discovery stay will preserve the parties' and the Court's time and resources without causing prejudice to any party.

---

[1] *McFadden v. Ins. Supermarket Inc.,* No. 1:23-cv-23957-KMM, 2024 WL 2797395, at *2 (S.D. Fla. Jan. 19, 2024).

3

Indeed, as more detailed below and in the Motion to Dismiss, Counter-Plaintiffs sued Mr. Rotella for fraud and negligent misrepresentation, both of which require a sufficient allegation of reliance, with fraudulent inducement requirement justifiable reliance. Yet, as noted above, the Settlement Agreement that was allegedly procured based upon this reliance, contains a provision disclaiming any reliance by Counter-Plaintiffs. Moreover, Counter-Plaintiffs did not have a right to rely on Mr. Rotella, who was, at the time of the alleged misstatements, their adversary. These defenses, if found to be persuasive by the Court, should result in a dismissal of the Counterclaim with prejudice as to Mr. Rotella. Because Mr. Rotella's Motion to Dismiss could resolve Plaintiff's Complaint entirely, a discovery stay is warranted. *See Gill-Samuel v. Nova Biomedical Corp.*, No. 13-62591-CIV, 2014 WL 11762719, at *1 (S.D. Fla. Feb. 18, 2014) (granting motion to stay discovery pending ruling on motion to dismiss); *Gonzalez v. Porter*, No. 23-20356-CIV, 2023 WL 2567435, at *1 (S.D. Fla. Mar. 13, 2023) (same).

I. **A "Preliminary Peek" of Mr. Rotella's Motion to Dismiss Reveals That Mr. Rotella is Likely to Prevail on Counter-Plaintiffs' Claim for Fraudulent Inducement (Count VIII) & Negligent Misrepresentation (Count IX)**

   a. <u>The Settlement Agreement Contains a Valid Non-Reliance Provision</u>

At mediation, the Parties signed the BTS. The Settlement Agreement was not signed until a month later following weeks of back-and-forth negotiations and after Counter-Plaintiffs improperly helped themselves to the Settlement Payment. Integral to its execution and to avoid the specious allegations alleged in Counter-Plaintiffs' Counterclaim, the Parties agreed as follows:

> **23. Reliance on Own Counsel.** In entering into this Agreement, the Parties acknowledge that they have relied upon the legal advice of their respective attorneys, who are the attorneys of their own choosing, that such terms are fully understood and voluntarily accepted by them, and that, other than the consideration set forth herein, no promises or representations of any kind have been made to them by the other Party. The Parties represent and acknowledge that in executing this Agreement they did not rely, and have not relied, upon any representation or statement, whether oral or written, made by the other Party or by that other Party's agents, representatives, or attorneys with regard to the subject matter, basis, or effect of this Agreement or otherwise.

Countercl. Ex. B, § 23.

Counter-Plaintiffs concede—in fact, they *allege*—that Mr. Rotella is a representative and/or agent of Insomniac. *See* Countercl. ¶ 3 ("Rotella is Insomniac's Chief Executive Officer"). They also allege (as is the case) that Mr. Rotella was a representative of Insomniac at the mediation

and made statements on behalf of Insomniac. *See id*. ¶¶ 76, 77. Nonetheless, Counter-Plaintiffs now allege, in a conclusory fashion, that Mr. Rotella made certain statements through unnamed agents at mediation a month prior to the execution of the Settlement Agreement.

Fatal to their claim, however, is the fact that Counter-Plaintiffs unambiguously represented in the Settlement Agreement that "other than the consideration set forth herein, no promises or representations of any kind have been made to them by the other Party." *Id*. Ex. B § 23. And, while Counter-Plaintiffs now allege that they relied upon these contractually disavowed statements, Counter-Plaintiffs represented in the Settlement Agreement that "[t]he Parties represent and acknowledge that in executing this Agreement they did not rely, and have not relied, upon any representation or statement, whether oral or written, made by the other Party or by that other Party's agents, representatives, or attorneys with regard to the subject matter, basis, or effect of this Agreement or otherwise." *Id*. This clause and Counter-Plaintiffs' representations therein requires dismissal with prejudice of Counter-Plaintiffs' fraudulent inducement and negligent misrepresentation claims. *See, e.g., Hall v. Coram Healthcare Corp.*, 157 F.3d 1286, 1288 (11th Cir. 1998) (where contract included statement that "no representations, warranties or inducements have been made to any party . . . other than the representations, warranties and covenants contained and memorialized in such documents," plaintiff's fraud claim for damages was properly dismissed); *Garcia v. Santa Maria Resort, Inc.*, 528 F. Supp. 2d 1283, 1295 (S.D. Fla. 2007); *Khanimov v. St. Tropez II, LLC*, 2009 WL 10667414, at *3 (S.D. Fla. July 1, 2009) (dismissing cause of action requiring allegations of reasonable reliance where "plaintiff's allegations that he relied on the representations of Defendant [we]re squarely contradicted by the Purchase Agreement" which contained a non-reliance clause). Indeed, to state a claim for fraudulent inducement or negligent misrepresentation, Counter-Plaintiffs must plausibly plead reliance. The nonreliance language of the Settlement Agreement quoted above confirms they cannot. *Trilogy Properties LLC v. SB Hotel Assocs. LLC*, 2010 WL 7411912, at *9 (S.D. Fla. Dec. 23, 2010) (plaintiff cannot show reasonable reliance "if a contract states that the party cannot rely on previous assurances and representations"). "[A] contractual agreement to "forego reliance on any prior false representation and limit . . . reliance to the representations . . . expressly contained in the contract" has the binding effect of negating an action based on fraud in the inducement." *Billington v. Ginn-La Pine Island, Ltd.*, LLLP, 192 So. 3d 77, 80–81 (Fla. 5th DCA 2016) (citing *La Pesca Grande Charters, Inc. v. Moran*, 704 So.2d 710, 714 n. 1 (Fla. 5th DCA 1998)).

5

Claims for fraudulent inducement are barred when the alleged misrepresentation explicitly contradicts an unambiguous provision in a written contract. *Siever v. BWGaskets, Inc.*, 669 F.Supp.2d 1286 (M.D. Fla. 2009); *Mac–Gray Services, Inc. v. DeGeorge*, 913 So.2d 630 (Fla. 4th DCA 2005); *Wadlington v. Continental Medical Services, Inc.*, 728 So.2d 352 (Fla. 4th DCA 1999); *Eclipse Medical, Inc. v. American Hydro–Surgical Instruments, Inc.*, 262 F.Supp.2d 1334 (S.D. Fla. 1999), aff'd, 235 F.3d 1344 (11th Cir. 2000) (applying Florida law); *Rosa v. Amoco Oil Co.*, 262 F.Supp.2d 1364 (S.D. Fla. 2003) (applying Florida law) (negative treatment on other grounds). Thus, statements or alleged misrepresentations made to induce an individual to enter a contract, if later contained within the terms of the actual contract, cannot constitute a basis on which to bring a fraud claim. Here, Counter-Plaintiffs' allegation that they justifiably relied on certain pre–Settlement Agreement statements is contradicted by a contractual provision expressly representing that they did not so rely.

The facts in *Yamashita v. Merck & Co., Inc.*, No. 11-62473-CIV, 2013 WL 275536, at *4–5 (S.D. Fla. Jan. 24, 2013) are analogous here. In *Yamashita*, the defendant sought dismissal with prejudice of the plaintiff's claims as being barred by the general release of the separation agreement executed by the parties. The plaintiff sued for fraudulent inducement seeking to avoid application of the release provision. The *Yamashita* court dismissed the fraudulent inducement claims and held as follows:

> "The law is clear: A party cannot recover in fraud for alleged oral misrepresentations that are adequately covered or dealt with, or expressly contradicted, in a later written contract."

No. 11-62473-CIV, 2013 WL 275536, at *4–5 (citing *Giallo v. New Piper Aircraft, Inc.*, 855 So.2d 1273 (Fla. 4th DCA 2003); *see also Taylor Woodrow Homes Florida, Inc.* v. 4/46–A Corp., 850 So.2d 536 (Fla. 5th DCA 2003); *Englezios v. Batmasian*, 593 So.2d 1077 (Fla. 4th DCA 1992).

Like Counter-Plaintiffs here, the plaintiff in *Yamashita* sought to circumvent an agreement's nonreliance clause by claiming that he was fraudulently induced to execute the agreement. The *Yamashita* court rejected this argument and held, "courts routinely honor non-reliance clauses, refusing to allow parties to rely on promises or representations made outside the contract." *Yamashita*, No. 11-62473-CIV, 2013 WL 275536, at *4–5 (citing *Taylor Woodrow Homes Fla., Inc.* 850 So.2d at 542–43. The *Yamashita* court went on to state:

> When the contract itself includes a clear and unambiguous non-reliance provision (confirming that Plaintiff carefully read and fully understood the entire document, including the "General Release" and "other Provisions" sections, and that he

6

> understood "that they represent the entire understanding between the Company and me and I have not relied upon any other representation or statement (either written or oral) concerning the reasons for my termination or the terms of this document"), any alleged reliance upon an oral representation outside of the settlement agreement is legally unjustified.

*Yamashita*, No. 11-62473-CIV, 2013 WL 275536, at *4–5 (citing *White Const. Co., Inc. v. Martin Marietta Materials, Inc*., 633 F.Supp.2d 1302 (M.D. Fla. 2009)).  Reliance on fraudulent representations is unreasonable as a matter of law under such circumstances.  *Topp, Inc. v. Uniden America Corp*., 513 F.Supp.2d 1345 (S.D. Fla. 2007); *Billington*, 192 So. 3d at 80–81 ("a contractual agreement to 'forego reliance on any prior false representation and limit ... reliance to the representations ... expressly contained in the contract' has the binding effect of negating an action based on fraud in the inducement")  (citing *La Pesca Grande Charters, Inc.*, 704 So.2d at 714 n. 1).

For these reasons, Mr. Rotella is likely to prevail on Counts VIII (fraudulent inducement) and IX (negligent misrepresentation) of Counter-Plaintiffs' Counterclaim and the Court should stay discovery until it adjudicates the Motion to Dismiss.

### a. Counter-Plaintiffs Did Not Have the "Right to Rely" on their Adversary Under *Pettinelli & Columbus Hotel*

The Eleventh Circuit and Florida Supreme Court are aligned: you do not have the right to rely on your adversary.  To wit, a party to a dispute cannot claim that their adversary fraudulently induced another party into executing a settlement or release.  *Pettinelli v. Danzig*, 722 F.2d 706 (11th Cir. 1984).  The common law remedy for fraud requires that the plaintiff show that the defendant (1) made a false representation of fact, (2) that the defendant knew was false when made, and (3) that the representation was made for the purpose of inducing the plaintiff to act in reliance of it.  *Cavic v. Grand Bahama Devel. Co., Ltd*., 701 F.2d 879 (11th Cir. 1983).  The misrepresentation must be about a present or past fact rather than a future fact.  *Cameron v. Outdoor Resorts of Am., Inc.*, 608 F.2d 187, 195 (5th Cir. 1979), on reh'g, 611 F.2d 105 (5th Cir. 1980).  Relevant here, however, is another element of common law fraud that was enunciated *in Columbus Hotel Corp. v. Hotel Management Co*., 116 Fla. 464, 156 So. 893 (1934) and expanded in *Pettinelli*, 722 F.2d 706.

The Eleventh Circuit in *Pettinelli*, relying on *Columbus Hotel Corp.*, confirmed the Florida Supreme Court's rule that "in addition to the enumerated three criteria, fraud requires a showing that the plaintiffs had a right to rely on the representations and that this right to rely is absent when

7

the allegedly fraudulent statement is made by an adversary." *Pettinelli*, 722 F.2d at 706 (citing *Columbus Hotel Corp.*, 116 Fla. 464, 156 So. 893).

In *Mergens v. Dreyfoos*, 166 F.3d 1114, 1117–19 (11th Cir. 1999), the plaintiffs entered into a release agreement with the defendants. The parties were in a dispute, an adversarial relationship, and, like the instant case, the release agreement resolved a lawsuit threatened by the plaintiff. The plaintiffs then contended that they were fraudulently induced to enter into the settlement and release:

> The parties had been in an adversarial relationship since well before the execution of the Agreement. Finally, the Mergenses entered into the Agreement, in part, to settle a lawsuit threatened by the Plaintiff–Appellants that claimed fraud. Based on the posture of the parties prior to the execution of the Agreement, the district court correctly held that the Mergenses had no legal right to rely on the representations. . . .

*Id*.

The Mergenses contended that they were justified in relying on representations set forth in the written agreement, no matter how adversarial the relationship might be. The *Mergens* court disagreed and noted that, the while the Mergenses could sue for breach of contract to the extent a contractual provision or representation was breached, the Mergenses could not sue for fraud based upon allegedly false statements of their adversary made to induce the execution of a release agreement. *Id.* Like the instant case, "[t]he Mergenses . . . contend[ed] that they justifiably relied on misrepresentations made to 'neutral' third parties, i.e., parties with whom the Defendant–Appellees were not in an adversarial relationship, and that these misrepresentations [could] form the basis of their fraud claims." The Eleventh Circuit again rejected this contention stating simply: "[w]e do not agree," and "[t]he Mergenses had no right to rely on any representation presented by Dreyfoos to a third party." *Id*.

Similarly, a sister court in this District, as affirmed by the Eleventh Circuit in *Florida Evergreen Foliage,* outlined what it referred to as the bright-line test in *Mergens*:

> The Eleventh Circuit established a bright-line test in *Mergens* regarding a party's legal right to rely on the representations of another party prior to entering an agreement which it succinctly stated as: 'when negotiating or attempting to compromise an existing controversy over fraud and dishonesty it is unreasonable to rely on representations made by the allegedly dishonest parties.' Specifically, the Court of Appeals found in *Mergens* that reliance on the defendants' misrepresentations and/or omissions was unjustified, as a matter of law, because: (a) the plaintiffs were sophisticated players in the industry and were represented by counsel; (b) the parties had been in an adversarial relationship since well before the

> execution of the agreement; and (c) the existing controversy between the parties involved allegations of fraud and/or dishonesty by the defendants. Based on this rule and its application in *Mergens,* this Court is obliged to find that Plaintiffs cannot establish reasonable reliance and to grant DuPont's motion for judgment on the pleadings.

*Florida Evergreen Foliage v. E.I. Du Pont De Nemours, Co*., 135 F. Supp. 2d 1271, 1290 (S.D. Fla. 2001) (internal citations omitted), aff'd sub nom *Green Leaf Nursery v. E.I. DuPont De Nemours & Co*., 341 F.3d 1292 (11th Cir. 2003). And, in entering judgement on the pleadings on a fraudulent inducement claim similar to the one alleged here, another sister court in this District in *Morrison v. Delray Med. Ctr., Inc*., 2024 WL 1703078, at *6 (S.D. Fla. Apr. 19, 2024), expounded on the *Pettinelli*/*Columbus Hotel* progeny and offered the following quote and collection of cases:

> Applying the *Columbus Hotel* rule to settlement agreements, a line of binding Eleventh Circuit cases holds that, as a matter of law, a person represented by counsel cannot justifiably rely on a statement made by an adverse party who that person has accused of fraud or dishonesty. *See, e.g., Pettinelli v. Danzig,* 722 F.2d 706, 710 (11th Cir. 1984) ("When negotiating or attempting to compromise an existing controversy over fraud and dishonesty it is unreasonable to rely on representations made by the allegedly dishonest parties."); *Green Leaf Nursery v. E.I. DuPont De Nemours & Co.*, 341 F.3d 1292, 1305 (11th Cir. 2003) ("Because Plaintiffs were represented by counsel, were in an antagonistic and distrusting relationship with DuPont, and settled litigation that included accusations of fraud and other dishonest conduct by DuPont, Plaintiffs could not reasonably or justifiably rely on any of DuPont's misrepresentations."); *Mergens v. Dreyfoos*, 166 F.3d 1114, 1118 (11th Cir. 1999) (no justifiable reliance where plaintiff was sophisticated litigant represented by counsel, parties had an adversarial relationship, and parties were settling a potential lawsuit that would have included allegations of fraud); *Affliati Network, Inc. v. Wanamaker,* 847 F. App'x 583, 586-87 (11th Cir. 2021) ("[W]hat was central to our analysis in [*Mergens* and *Green Leaf]* was that the plaintiffs were represented by counsel, 'in an antagonistic and distrusting relationship' with the defendants, and had settled litigation, or threatened litigation, 'that included accusations of fraud and other dishonest conduct.' ").

Here, the Counterclaim makes clear that the Parties were adversarial prior to the execution of the Settlement Agreement. The Parties attended a mediation to resolve a dispute, and the Counter-Plaintiffs' entire fraud in the inducement claim is predicated on statements made at the very mediation held to settle the dispute. Indeed, Counter-Plaintiffs, in paragraphs 48-49 of their Counterclaim, allege that:

Rotella is not just a criminal and a fraud. He is also insufferable to work with. The CDD Parties have had the misfortune of witnessing and experiencing first-hand Rotella's cruelty, self-centeredness, and volatility towards his business partners and/or employees. Rotella's self-absorbed mindset makes him and Insomniac impossible to collaborate with.

Yet, in the face of these allegations and the *Pettinelli* and *Columbus Hotel* cases and their progeny, Counter-Plaintiffs somehow seek to convince this Court that they justifiably relied on statements made by such a purportedly dishonest person during a mediation to resolve a dispute. Importantly too, Counter-Plaintiffs were represented by counsel during the mediation and prior to the execution of the Settlement Agreement. This is confirmed by the "Reliance on Own Counsel" provision in Section 23, and the screenshot in paragraph 106 of the Counterclaim referencing Counter-Plaintiffs' attorney. Thus, Mr. Rotella is likely to prevail on Count VIII (Fraud in the Inducement) and discovery should be stayed pending the Court's determination of the Motion to Dismiss.

### b. Counter-Plaintiffs' Negligent Misrepresentation Claim is Barred by the Release

It is peculiar that Counter-Plaintiffs sue for negligent misrepresentation based upon statements made prior to the execution of the Settlement Agreement. Indeed, all such claims were expressly released. Though their fraud claims are empty, their inclusion is perhaps understandable based upon the mistaken belief that procurement through fraud may make the Settlement Agreement voidable. That justification, however, is not present with negligent misrepresentation.

Section 8 of the Settlement Agreement states as follows:

Limited Mutual Release.

(a) The Parties, on behalf of themselves, their predecessors, successors, direct and indirect parent companies, direct and indirect subsidiary companies, companies under common control with any of the foregoing, affiliates, and assigns, and its and their past, present, and future officers, directors, shareholders, interest holders, members, partners, attorneys, agents, employees, managers, representatives, assigns, and successors in interest, and all persons acting by, though, under, or in concert with them, and each of them, **hereby release and discharge the other Parties, together with their predecessors, successors, direct and indirect parent companies, direct and indirect subsidiary companies, companies under common control with any of the foregoing, affiliates and assigns and its and their past, present, and future officers, directors, shareholders, interest holders, members, partners, attorneys, agents, employees, managers, representatives, assigns, and successors in interest, and all persons acting by, through, under, or in concert with them**, and each of them, from all known and

10

> unknown charges, complaints, claims, grievances, liabilities, obligations, promises, agreements, controversies, damages, actions, causes of action, suits, rights, demands, costs, losses, debts, penalties, fees, wages, medical costs, pain and suffering, mental anguish, emotional distress, expenses (including attorneys' fees and costs actually incurred), and punitive damages, of any nature whatsoever, known or unknown, which any Party has, or may have had, against the other Parties, whether or not apparent or yet to be discovered, related to and/or arising from the Factory Town Venture, Factory Town, FTIG, FT Miami, FTINS, the FT Parties, the CDD Services, the Dispute, and/or the January 2024 Agreements ("Released Claims"). Nothing herein shall be construed as a release of claims that accrued after the Effective Date or the Parties obligations under this Agreement or the Term Sheet. Nothing here in shall be construed as a release of claims by Factory Town Holdings, LLC.

Countercl. Ex. B. § 8.

As alleged in paragraph 3 of the Counterclaim, Mr. Rotella was Insomniac's Chief Executive Officer and is therefore included within the released parties in the limited mutual release above. The claims asserted in the Counterclaim undoubtedly relate to and/or arise from the Factory Town Venture, Factory Town, CDD Services, and the Dispute. And the allegedly negligent misstatements were made prior to the execution of the Settlement Agreement.[2] They are, therefore, categorically barred.

While this is common sense, *Mergens* is again instructive and states, under Florida law, "[t]he validity and effect of a settlement and release are governed by contract law." *Mergens*, 166 F.3d 1114 at 1117 (citing *Travelers Insurance Co. v. Horton,* 366 So.2d 1204 (Fla. 3rd DCA 1979)). "A party is bound by, and a court is powerless to rewrite, the clear and unambiguous terms of a voluntary contract." *Mergens,* 166 F.3d 1114, 1117 (citing *Medical Center Health Plan v. Brick,* 572 So.2d 548, 551 (Fla. 1st DCA 1990)).

The plaintiffs in *Mergens*, like Counter-Plaintiffs here, agreed to release not only Insomniac, but also its officer, Mr. Rotella, from any and all causes of action from the beginning of time to the date the agreement was signed. The Parties agreed that the Settlement Agreement represented the entire understanding of the Parties and that any prior representation was superseded by the current contract. Countercl. Ex. B § 17. In affirming dismissal in *Mergens*, the Eleventh Circuit held:

---

[2] Counterclaim ¶ 196 ("Rotella stated to the CDD Parties during the June 2, 2025, mediation before Judge Hanzman and during the parties' subsequent negotiations in finalizing the Settlement Agreement . . . .")

> The district court was correct in holding that the general release unambiguously bars all actions premised on claims that arose before, and contemporaneous to, the execution of the Agreement. The only question remaining is whether the Mergenses can establish that the release was procured by fraud, thereby making it voidable.

*Mergens*, 166 F.3d at 1117; *see also Pettinelli* 722 F.2d 706 (claims prior to release were barred); *Columbus Hotel Corp.*, 116 Fla. 464, 156 So. 893, *Morrison*, No., 2024 WL 1703078, at *6 (granting judgment on the pleadings because conduct encompassed by release, which occurred prior to the date of the release was, in fact, released).

Therefore, Mr. Rotella is likely to prevail on Counter-Plaintiffs' negligent misrepresentation claim, as it is predicated on prerelease statements made at mediation.

### c. Counter-Plaintiffs' Claims Fail Because the Allegedly False Statements are Mere Puffery, not a Statement of a Past or Present Fact

As noted above, the subject matter of the dispute is encompassed in a written agreement: the Settlement Agreement. Counter-Plaintiffs here, however, seek—as they promised they would—to include personal claims and attacks against Mr. Rotella. But even assuming the Settlement Agreement did not exist, and the *Columbus Hotel* doctrine was inapplicable, the claims against Mr. Rotella fail because the alleged statements cannot support a claim for fraud. In a nutshell, Counter-Plaintiffs claim that they relied upon "Rotella's and Insomniac's intention to collaborate in good faith with the CDD Parties on Hocus Pocus and Art Basel." Countercl. ¶¶ 77, 79. These, however, are precisely the sort of statements Florida law says cannot be the basis of a fraudulent inducement claim. *Maunsell v. Am. Gen. Life & Acc. Ins. Co.*, 707 So. 2d 916, 917 (Fla. 3d DCA 1998) ("A false statement amounting to a promise to do something in the future is not actionable fraud.") (citing *Sleight v. Sun and Surf Realty, Inc.*, 410 So.2d 998, 999 (Fla. 3d DCA 1982); *see also Stoler v. Metropolitan Life Ins. Co.,* 287 So.2d 694 (Fla. 3d DCA 1974); *Evans v. Gray,* 215 So.2d 40 (Fla. 3d DCA 1968), cert. denied*,* 222 So.2d 748 (Fla. 1969). The misrepresentation must be about a present or past fact rather than a future fact. *Cameron*, 608 F.2d at 195; *see Gemini Investors III, L.P. v. Nunez*, 78 So.3d 94, 97 (Fla. 3d DCA 2012) ("Generally, the fraudulent statement must concern a past or existing fact."). Puffery, which "comprises generalized, vague, nonquantifiable statements of corporate optimism" are not actionable as fraud. *Carvelli v. Ocwen Fin. Corp.*, 934 F.3d 1307, 1318 (11th Cir. 2019) (holding that proclamations that a company "expect[s] to continue to allocate significant resources" are not actionable as securities fraud).

12

**II.  A "PRELIMINARY PEEK" OF MR. ROTELLA'S MOTION TO DISMISS REVEALS THAT MR. ROTELLA IS LIKELY TO PREVAIL ON COUNTER-PLAINTIFFS' CLAIMS FOR BREACH OF FIDUCIARY DUTY BECAUSE THEY RUN AFOUL OF THE INDEPENDENT TORT DOCTRINE**

Counter-Plaintiffs, continuing with the square peg-round hole approach, allege that the Settlement Agreement, which separates the Parties, created a partnership. Counter-Plaintiffs then claim that Insomniac breached its fiduciary duties to its partners. Fatal to their claims, however, is the fact that their fiduciary duty claims are based upon the same contractual terms and same allegations as those purporting to support Counter-Plaintiffs' breach of contract claims. This requires dismissal.

Florida's "independent tort doctrine bars recovery in tort for actions that challenge a breach of contract[.]" *Pastor v. Bank of Am., N.A.*, 664 F. Supp. 3d 1365, 1367 (S.D. Fla. 2023) (quoting *Stepakoff v. IberiaBank Corp.*, No. 22-cv-20286-BLOOM/Otazo-Reyes, 637 F.Supp.3d 1309, 1315 (S.D. Fla. Oct. 31, 2022) (Bloom, J.). In other words, the doctrine prohibits a claimant from "repackag[ing] [ ] breach of contract claims as independent actions in tort." *Id.*: *see also Spears v. SHK Consulting & Dev., Inc.*, 338 F. Supp. 3d 1272, 1279 (M.D. Fla. 2018) ("District courts in Florida have thus held that it is well settled that a plaintiff may not recast causes of action that are otherwise breach-of-contract claims as tort claims.") (internal quotation marks omitted). "Therefore, to set forth a claim in tort between parties in contractual privity, a party must allege action beyond and independent of breach of contract that amounts to an independent tort." *Kaye v. Ingenio, Filiale De Loto-Quebec, Inc.*, 2014 WL 2215770, at *4, (S.D. Fla. May 29, 2014) (Rosenbaum, J.) (dismissing plaintiff's fraudulent inducement claim because it was "precisely the same as a potential breach-of-contract claim").

"The case law does not support a finding of a breach of fiduciary duty when the breach of fiduciary duty rests on the contractual relationship itself." *See Griffin v. Motorsport Games Inc.*, No. 24-CIV-21929, 2024 WL 4564330, at *9 (S.D. Fla. Oct. 24, 2024); *see also Deltec Bank & Tr. Ltd. v. Carbonara*, No. 25-20978-CIV, 2025 WL 1913204, at *10 (S.D. Fla. July 9, 2025), report and recommendation adopted, No. 25-20978-CIV, 2025 WL 1984299 (S.D. Fla. July 17, 2025); *Excess Risk Underwriters, Inc. v. Lafayette Life Ins. Co.,* 208 F.Supp.2d 1310, 1317 (S.D. Fla. 2002) (granting a motion to dismiss a breach of fiduciary duty claim because the allegations for the breach of fiduciary duty claim were not independent of the parties' contracts); *Detwiler v. Bank of Central Fla.,* 736 So.2d 757, 759 (Fla. 5th DCA 1999) (holding "a cause of action for breach of

13

fiduciary duty will not lie where the claim of breach is dependent upon the existence of a contractual relationship between the parties").

Here, Counter-Plaintiffs' breach of fiduciary duty claims are nearly identical to their breach of contract claims. More specifically, Counter-Plaintiffs allege Mr. Rotella breached his fiduciary duty to a non-existent partnership by "breaching the Settlement Agreement and/or not paying the CDD Parties for their investment of substantial time, effort, expertise, and resources into Hocus Pocus and Art Basel." Countercl. ¶ 204.

These allegations are nearly identical to the allegations supporting counts I and II, both of which rely principally on allegations that Insomniac "repeatedly failed to collaborate with the CDD Parties on Hocus Pocus and Art Basel." Countercl. ¶¶ 132, 136.

As a result, Mr. Rotella is likely to prevail on the claims against him, and discovery should be stayed while the Court adjudicates the Motion to Dismiss. *See Pastor*, 664 F. Supp. 3d at 1367 (applying independent tort doctrine and dismissing claims for breach of fiduciary duty against a bank with prejudice where the plaintiff did not even plead a breach of contract because "it [was] impossible to separate [the plaintiff's] . . . breach of fiduciary duty claims from his underlying contractual relationship.").

### III.  A STAY OF DISCOVERY IS ESPECIALLY WARRANTED BECAUSE COUNTER-PLAINTIFFS FACE SIGNIFICANT CHALLENGES TO AMEND AND IT IS UNCLEAR WHETHER THE PENDING COMPLAINT WILL REMAIN AS TO MR. ROTELLA

A stay is particularly warranted as it is unlikely that Counter-Plaintiffs will be able to amend their Counterclaim to plausibly allege a cause of action. Because there is a specific non-reliance provision discounting Counter-Plaintiffs' fraud claim and a release specifically eliminating the negligent misrepresentation claim, leave to amend may not be granted.

### IV.  A STAY OF DISCOVERY HERE IS REASONABLE AND COUNTER-PLAINTIFFS WILL NOT BE PREJUDICED BY A STAY OF DISCOVERY

A stay in this instance would preserve time and litigation resources of both parties; allow the parties to avoid the burden of potentially unnecessary, expensive, and fruitless discovery; and not prejudice either party. If Mr. Rotella's Motion to Dismiss is granted, the case will be resolved, and no discovery will be needed. Thus, "[a] discovery stay is also reasonable to avoid unnecessary expense for [Mr. Rotella]." *Zamber v. Am. Airlines, Inc.*, No. 16-CV-23901, 2017 WL 5202748, at *9 (S.D. Fla. Feb. 17, 2017). And a minor delay in discovery pending resolution of Mr. Rotella's

14

Motion to Dismiss will not prejudice either party nor cause any harm—the case is in its initial stages and no depositions are currently scheduled. Counter-Plaintiffs cannot demonstrate unfair prejudice from a brief stay while the Court addresses the Motion to Dismiss, nor can Counter-Plaintiffs show that a slight delay in discovery would cause any harm. Therefore, a stay of discovery is reasonable. *See Chudasama*, 123 F.3d at 1368 ("any legally unsupported claim that would unduly enlarge the scope of discovery should be eliminated before the discovery stage, if possible.").

Moreover, Counter-Plaintiffs have received over 45 days of extensions already, with Insomniac and Rotella requesting and receiving none. *See* Dkt. 42 (Motion to Dismiss filed without extensions 21 days after service of the Counterclaim). Those extensions that were requested by Counter-Plaintiffs were not opposed by Insomniac or Mr. Rotella. Mr. Rotella should not be penalized for extending this professional courtesy and be forced to engage in costly discovery when there are significant disputes regarding the plausibly of Counter-Plaintiffs' allegations.

## V.    MR. ROTELLA WILL BE PREJUDICED IN THE ABSENCE OF A STAY

Despite Mr. Rotella personally having nothing to do with this lawsuit, Counter-Plaintiffs made clear prior to this lawsuit that they intend to involve Mr. Rotella to the fullest extent possible. Mr. Rotella, Insomniac's CEO, does not have any unique, non-repetitive firsthand knowledge about the matters at issue in this action. Denying a short, defendant-specific stay would inflict concrete prejudice on Mr. Rotella, who leads a business with over 550 full-time employees and over 2500 seasonal employees, and whose day-to-day responsibilities cannot be delegated without real operational cost. Opening discovery now all but guarantees immediate apex-level demands—custodial ESI collection across multiple devices and platforms, time-consuming search/privilege review, third-party subpoenas aimed at his communications, and a deposition that would require substantial preparation and interruption to ongoing projects. Those burdens are not the kind that can be unwound if the Court later dismisses the claims; the time, expense, and competitive exposure are spent once and for all. And here, they would be expended despite threshold, facial defects Mr. Rotella's Motion to Dismiss identifies (included a contracted-for non-reliance provision, adversary-reliance, and a governing release), meaning the discovery would likely be unnecessary.

The prejudice is heightened because Counter-Plaintiffs have explicitly targeted Mr. Rotella personally in a way designed to sidestep apex safeguards—telegraphing a plan "to sue and smear"

him in an attempt to gain access to Mr. Rotella when the law prohibits such access—so pushing forward before the Court's "preliminary peek" would reward precisely the kind of harassment *Chudasama* warns against. Indeed, given certain allegations in the Counterclaim (¶¶39–52), it appears that Counter-Plaintiffs have added Mr. Rotella as a party to get a deposition without limits in order to attempt to question Mr. Rotella on decades-old matters completely unrelated to this litigation in an attempt to harass and/or intimidate Mr. Rotella under the cover of litigation privilege to later put such questions on a public docket in a means that would not otherwise be permissible under the law.

By contrast, a short, self-expiring stay limited to discovery directed to Mr. Rotella preserves the status quo, avoids non-recoverable executive-time and discovery costs, and imposes no meaningful prejudice on Counter-Plaintiffs while the Court decides a motion that is likely dispositive as to Mr. Rotella.

## CONCLUSION

WHEREFORE, Counterclaim Defendant, Pasquale Rotella, hereby prays for an order staying discovery while the Court adjudicates the Motion to Dismiss, along with any such further relief this Court deems just and proper under the circumstances.

Dated: October 22, 2025,                              Respectfully submitted,

**SHAW LEWENZ**

By:   */s/Jordan A. Shaw*
Jordan A. Shaw, Esq.
Florida Bar No.: 111771
Zachary D. Ludens, Esq.
Florida Bar. No.: 111620
Gabriel E. Morales, Esq.
Florida Bar. No.: 1038778
Lauren N. Palen, Esq.
Florida Bar. No.: 1038877
110 SE 6th Street, Suite 2900
Fort Lauderdale, FL 33301
Telephone: (954) 361-3633
Facsimile: (954) 989-7781
Primary: jshaw@shawlewenz.com;
zludens@shawlewenz.com;
gmorales@shawlewenz.com;
lpalen@shawlewenz.com
Secondary:   avazquez@shawlewenz.com;

16

        lgrealy@shawlewenz.com
*Attorneys for Counter-Defendants Insomniac Holdings, LLC and Pasquale Rotella*

### **CERTIFICATE OF CONFERRAL**

I HEREBY CERTIFY that on I conferred with counsel for Counter-Plaintiffs regarding the relief sought in this Motion, and Counter-Plaintiffs object to the relief sought.

        */s/ Jordan A. Shaw*
        Jordan A. Shaw, Esq.

### **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that the foregoing document was filed with the Court's CM/ECF system this October 22, 2025, and was served on all counsel of record via notices generated by the same.

        */s/ Jordan A. Shaw*
        Jordan A. Shaw, Esq.